BALTIMORE & OHIO R. R. Co. *vs*. STATE, USE OF KELLY ET AL.

In an action under the Act of 1852, ch. 299, by the wife for damages conse-
quent upon the death of the husband, resulting from the carelessness of the
defendant, a rail road company, evidence was given of the age, habits,
health and occupation of the deceased at the time of his death, and also
of the number of his family and their condition before and after his death,
but no evidence was offered of the specific wages paid the deceased at the
time of his death, HELD :

That a prayer—"That in the absence of proof, other than the death, age and
condition of health, and members and state of the family of said deceased,
of actual damage, the verdict of the jury, in the event of its being for the
plaintiff, must be for nominal damages only"—was properly rejected.

2nd. That in assessing the damages the jury should confine themselves to such
compensation to the surviving members of Kelly's family as would supply
to them the same results as would have followed from his labor during the
probable period he would otherwise have lived and earned a livelihood; but
that they might take into consideration his age, health and occupation, and
the comfort and support afforded his family at the time of his death.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellee, in the Superior
Court of Baltimore city, to recover damages under the Act
of 1852, ch. 299, for the killing of a certain William Henry
Kelly.

*Exception.*—The plaintiff to maintain the issues on his
part joined, at the trial of the cause offered evidence tend-
ing to prove :

That the deceased was one of the employees of the Bal-
timore and Ohio R. R. Company before and on the 20th
July, 1857 ; and that on said day he was killed "by being
caught and crushed between an engine and tender, on the
former of which he was at work;" that the company's
agent in charge of the locomotive that caused the acci-
dent was incompetent for his place ; that said locomotive
was defective, and that the company had knowledge of said
facts ; that said Kelly was at the time of his death from
thirty to thirty-six years of age ; a sober, moral, industrious

man, enjoying good health ; that he left surviving him a widow, a son about five years old and a mother, which survivors were the *cestui que uses* in the present action; that for about four years prior and up to the time of his death, said Kelly kept house in Baltimore, supporting his wife and child, who lived with him; that he left little or no property ; and that since his death his widow had supported herself and child by her own exertions.

It was further proved that said Kelly had been for four years prior to and up to the time of his death employed by the company as one of the hands in the boiler shop at Mount Clare ; that he was an industrious man, a good hand, &c. " There was no proof of the specific wages paid to Kelly at the time of his death."

No prayers were offered by the plaintiff below ; seven prayers were offered by the defendant, all of which were granted by the Court except the fifth, which was in these words :

" That in the absence of proof, (other than the death, age and condition of health, and members and state of the family of said Kelly,) of actual damage, the verdict of the jury, in the event of its being for the plaintiff, must be for nominal damages only."

To the refusal of the Court (MARTIN , J.,) to grant this fifth prayer the defendant excepted, and the verdict being for the plaintiff, this appeal was taken.

This cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*John H. B. Latrobe* for the appellant.

The prayer in question was suggested by the belief that, with the power to prove what the wages were, the plaintiff was unwilling to show that they are comparatively small, and went before the jury at a venture. Now, the

Balto. & O. R. R. Co. *vs.* State use of Kelly et al.

rule of law is well known, that the best evidence of which a case is susceptible must be produced where practicable. 2 *Stevens' Nisi Prius,* 1509. The question here was as to the amount that would compensate the widow and children for the loss they had sustained.

Punitive damages were not claimed; no prayer was offered by the plaintiff asking for them. The naked question was the compensatory damages. To ascertain what would be the best proof of them we must look at the elements properly entering into the calculation; these were:

1st. The age of the party and the probable length of life, during which he would be able to earn a support for his family, in a case where, like the present, his family was dependent on his daily labor. Sufficient evidence to this extent, it admitted, was given.

2nd. The wages of such a person at the time of his death. These, unquestionably, ought to have been shown, when the jury would have had the elements for a fair conclusion as to the actual pecuniary loss sustained by the widow and children in consequence of the death. It stands to reason that the widow and children of a man, say, for illustration, at ninety cents a day, suffer less pecuniary damage from the loss of the husband and father than the widow and children of a man earning two dollars a day would suffer.

The verdict in this case was for $5,000. The income from this at six per cent. is $300 per annum in perpetuity, which will be the income paid to the plaintiffs if the present verdict stands; when, allowing even that the earnings of the deceased were one dollar per day, and that he would never have lost a day until he was sixty years of age, (a most improbable supposition.) The plaintiff, had he lived, would have had such an income for twenty-five years only, and from this income even there would have had to have

18	v. 24.

been deducted the cost of his own support. In other words, the finding of the jury in the case is a perfect illustration of the importance of the best evidence where it can be procured, where damages purely compensatory in their character are sought.

The exception to the rule requiring the best evidence is the case where it is impossible to obtain it. But here there was no difficulty of the sort.

The authorities seem to be conclusive that the verdict, if for more than nominal damages, must be based, not merely on the fact of the death, but upon data which the jury may weigh in coming to a pecuniary result.

The Maryland Act is, in the main, taken from Lord CAMPBELL's Act, 9 and 10 Victoria, ch. 93, and on this several decisions have taken place in England, showing that the pecuniary loss is the only loss to be considered. *Armsworth vs. South Eastern R. R. Co.*, 11 *Jurist*, 758. *Gilbard vs. The Lancashire and Yorkshire R. R. Co.*, (*See Chitty on Carriers*, 413. *Blake vs. the Midland R. R. Co.*, 83 *Eng. C. L. Rep. See also New York vs. Ransom*, 23 *How.*, 487.

*A. W. Machen* and *R. J. Gittings* for the appellee.

The only question is, whether the Court below was justified in rejecting the defendant's fifth prayer. There is no question of the plaintiff's right to recover, nor as to the amount of the verdict if actual damages were allowable; for the jury were properly instructed upon the measure of damages, and the *quantum* was a matter for their own determination, subject only to the discretion of the Superior Court on a motion for a new trial.

The defendant's fifth prayer demanded a peremptory instruction to the jury, that in finding for the plaintiff they must give nominal damages only.

1. It is a conclusive objection to the prayer that in pronouncing that there was no evidence of actual damage, other than the death, age and condition of health, and members and state of health of the family of William H. Kelly, the deceased, it altogether excluded the material facts, that by means of his labor he was keeping house and supporting his family, who by his death were thrown upon their own exertions.

The prayer has the vice condemned in the second prayer of the defendant in *Planters' Bank vs. Bank of Alexandria*, 10 *G. & J.*, 350, 351, 357, and in the prayer contained in the fourth exception in *Byer vs. Etnyre*, 2 *Gill*, 162.

2. The statute of 9 and 10 Victoria, ch. 93, adopted—with modifications immaterial to the present inquiry—in our own Act of 1852, ch. 299, has now received a settled construction in England. If the deceased himself, had he not been killed, could have sued, there is a foundation for a case against the defendant. The extent to which the actual plaintiffs can recover depends upon another consideration, viz: Their reasonable expectation of pecuniary benefit from the continuance of the life of the person killed. They do not recover as his executors, (although in England the action is in the name of the executor,) nor is the *quantum* of damages fixed by the injury to his estate. And their expectation does not need to be founded on a right—if it is a reasonable expectation this is all that is required. *Dalton vs. South Eastern R. R. Co.*, 4 *C. B. N. S.*, 296. 93 *Eng. C. L. Rep.*, 296.

In every trial there are some things which may be safely left to implication from matters of general knowledge. This rule of evidence, which is common to all jurisprudence, is well stated by Domat. "Some facts are such that they are always reputed to be true till the con-

trary has been proved; and there are others which are always reputed contrary to truth, unless they are proved. 1 *Domat by Cushing*, § 2070, (1 *Dom. Loix. Civ. L.*, 3 *s.*, 4 *pl.*, 7.) It was upon this principle it was held in *Fay vs. Prentice*, 1 *C. B.*, 828, 50 *Eng. C. L. Rep.*, 728, that the jury might find that rain fell in a certain garden at Islington, in Middlesex, sometime during the interval between the 1st of May and the 2nd of July, in the year 1844, although no evidence of the fact had been offered.

The tortuous killing being established, only two things, as we have seen, were necessary to make up the claim to damages : 1st, that the person killed, if he had survived, would have been able to render pecuniary assistance to the parties for whose use the suit was brought; and 2nd, a reasonable probability that he would have bestowed such benefits.

The proof in this case more than supplies the demands of the law.

Now, as to the worth of that support and maintenance, including as to the child, his education also, the jury had before them the age and habits of the parent, the age of the child, and especially the condition or station in life of all the parties. Who can say that the pecuniary value to a wife and her child five years old, of the support, which, during the child's minority at least, and the mother's life time, they would have continued to enjoy in the household of a laboring man of the character of Kelly, living in the degree of comfort which we all know belongs to such homes in our favored city of Baltimore, was not worth five thousand dollars? But, be this as it may, such support has some actual value, and the question of amount was for the jury. *Duckworth vs. Johnson*, 4 *Hurls. & Nor.*, 653, 657. *Dorsey vs. Gassaway*, 2 *H. & J.*, 413. *Fishwick vs. Sewell*, 4 *H. & J.*, 403. *Gaither vs. Blowers*, 11 *Md. Rep.*, 552, 553. *Oldfield vs. N. Y. &*

*Harlem R. R. Co.*, 3 *Smith*, 103. *Same case on appeal in* 14 *N. Y. Rep.*, (4 *Kernan*) 310.

The only case relied upon by the learned counsel of the appellant in support of the theory of his fifth prayer, *The Corporation of New York vs. Ransom*, 23 *How.*, 487, has, we submit, no bearing on the present question. It is only necessary, however, to refer to *Seymour vs. McCormic*, 16 *How.*, 485, the case mentioned in the opinion of the Court in *The Corporation of New York vs. Ransom*, as the foundation of their judgment, to perceive that there is no analogy between that class of patent cases, and actions for personal injury and killing like the present. So far as there is anything common in the law applicable to them it is of the most elementary and undisputed description. Whatever is novel in the decisions under the patent law, proceeds upon grounds peculiar to the subject matter.

As to the other cases cited by the defendant's counsel, *Blake vs. the Midland R. R. Co.*, 88 *Eng. C. L. Rep.*, 93, (also on the appellee's brief,) it only settled that the verdict is not to be regulated by the idea of giving a *solatium* for mental sufferings. Our jury were so instructed. *Armsworth vs. The South Eastern Railway Co.*, 11 *Jur.*, 758, (also cited by Mr. Latrobe,) one of the earliest cases upon Lord CAMPBELL's act—a *nisi prius* ruling of Baron PARKE's—though less important now than formerly, when there were no decisions in banc on the subject, is still instructive as illustrating how impracticable it must always be to take away a reasonable freedom of judgment from the jury. The whole passage forming the close of the learned Judge's charge, of which the first sentence is extracted in the brief of the appellant, is far from justifying any inference adverse to the appellee.

The rule requiring the production of the best evidence, which seems to be invoked by the counsel of the appellant, has no application to such a case as the present. All the

evidence here brought into comparison is of the same quality, and the rule has nothing to do with the question of the quantity, or amount of proof. That less evidence is offered than might have been adduced, or that weaker proofs have been selected in preference to stronger, or that there has been an omission to supply all the proofs capable of being produced, constitute no infringements of it. *Richardson vs. Milburn*, 17 *Md. Rep.*, 67, 71. 1 *Phill. Ev.*, 570. The operation of the rule, where it applies, is as a rule of exclusion—it excludes certain evidence because some better evidence is presumed to be behind, and justice refuses to listen to that which is of inferior quality. But here there is no exception to the admission of any of the evidence which was actually introduced. The other, and, as the learned counsel of the appellant contends, less satisfactory evidence, did come in, and it came in without objection. So it is too late to appeal to the rule. 1 *Phill. Ev.*, 567. 1 *Stark. Ev.*, 641.

3. But, at any rate, simply refraining from instructing the jury to give only nominal damages was not error, the Court having already given positive instructions as to the measure of damages, which, if followed and applied by the jury, were sufficient to keep them within just bounds.—*Pennsylvania R. R. Co. vs. Ogier*, 35 *Penn.*, 60. Consistently with the instructions given, the jury could not award real damages unless they were due.

4. There was evidence also from which it was competent to the jury to find that gross carelessness on the part of the defendant in the management of its dangerous machinery which, according to the rule of law forcibly expounded in *Hopkins vs. The Atlantic & St. Lawrence R. R.*, 36 *N. H.*, 1, is equivalent, in these great railroad corporations, to bad motives, and equally justifies the exaction of exemplary damages. And for this reason, besides others, the defendant had no right to require the Court to prohibit the jury

from going beyond nominal damages. *Penn. R. R. Co. vs. McCloskey*, 23 *Penn.*, 531.

In conclusion, relying on the points and authorities mentioned in the brief, as well as the additional cases above referred to, we submit that there was evidence of actual damage, and that the Court, after giving every instruction which the defendant asked for the guidance of the jury, as well with respect to the liability of the company, as the rules for estimating the damages, committed no error in refusing to confine the jury in a case of such character to merely nominal damages. *Britton vs. South Wales R. R. Co.*, 3 *Hurls. & Nor.*, 963.

COCHRAN, J., delivered the opinion of this Court.

This suit was brought by the appellee, under the Act of 1852, ch. 299, to recover damages resulting from the death of William Kelly, which it is alleged was caused by negligence on the part of the appellant. The exception, on which the case was brought up, contains evidence of the age, habits, health and employment of the deceased, at the time he lost his life, and also of the members of his family ; that he supported them by his labor, and that after his death his widow supported herself and child by her own exertions.

All the prayers of the appellant were granted excepting the 5th ; and by the 7th, the last of the series, the jury were instructed that in assessing the damages they should confine themselves to such compensation to the surviving members of Kelly's family, as would supply to them the same results as would have been afforded by his labor during the probable period he would otherwise have lived and earned a livelihood ; but that they might take into consideration his age, health and occupation, and the comfort and support afforded his family at the time of his being killed.

The proposition submitted by the 5th prayer, to the rejection of which this exception was taken, was that, in the absence of proof as to the wages or earnings of Kelly, no standard was shown by which the jury could find the amount of damages sustained, and that their verdict should, therefore, have been for nominal damages only.

Vindictive or punitive damages were not claimed, and, indeed, as we have recently held, punitive damages are not recoverable in such a case as this, under the Act of 1852. But looking to the concession made in the 7th prayer, that the jury might, in assessing the damages, take into consideration the age, health and occupation of the deceased, as well as the comfort and support afforded by him to his family, it is a little difficult to understand why the appellant should be allowed to insist on the doctrine propounded by the rejected prayer. Without, however, disposing of the question on that ground, let us inquire whether this prayer is otherwise free from objection.

It is admitted that there was no evidence of the specific wages paid to Kelly at the time of his death, although there was proof of the character of his occupation, as well as of the fact that he was in the employ of the appellant. The prayer goes on the theory, that the rate of wages, paid at the time of the death, was the true and exclusive standard of the damages sustained, and, in the absence of proof on that point, that nominal damages only could be recovered. So far as we have been able to learn, this proposition is not only unsupported by any direct authority, but too strict in its character to admit of general application. The adoption of it in this case, would have withdrawn from the consideration of the jury a mass of evidence that tended to show the nature and extent of the damages actually sustained. Suppose, for instance, that Kelly was out of employment at the time he was killed, or that he was then

pursuing some occupation affording a livelihood for himself and family, yet of a character not to show the specific amount derived from it, could it be pretended, that being out of employment, or that the want of proof of the amount derived from the occupation pursued, would have the effect of limiting the right of recovery to nominal damages only? We do not understand that to be the rule. In *Franklin vs. South Eastern Railway Co.*, 3 *Hurls. & Nor.*, 211, the action was brought to recover damages under the Act from which our Act of 1852 was derived, and POLLOCK, C. B., in delivering the opinion of the Court, said that "it was clear that damage must be shown, for the jury are to give such damages as they may think proportioned to the injury. It has been held, that these damages are not to be given as a *solatium*, but are to be given in reference to a pecuniary loss. It is also clear, that the damages are not to be given merely in reference to the loss of a legal right, for they are to be distributed among relations only, and not to all individuals sustaining such a loss. If then the damages are not to be calculated on either of these principles, nothing remains, except that they should be calculated in reference to a reasonable expectation of a pecuniary benefit, as of right or otherwise, from the continuance of the life." In *Dalton* against the same defendant, 93 *Eng. C. L. Rep.*, 296, it was said "that the reasonable expectation of pecuniary advantage by the relation remaining alive, may be taken into account by the jury, and damages may be given in respect of that expectation being disappointed, and the probable pecuniary loss thereby occasioned." In *Duckworth vs. Johnson*, 4 *Hurls. & Nor.*, 652, the action was brought by a father for damages resulting from the killing of his son, and there the question was whether the plaintiff had sustained damage that entitled him to recover. There was proof that the son had previously earned four shillings a week, but that he was out

of employment at the time of his death.   POLLOCK, C. B., again said, "It is true no distinct evidence was given of the value of the boy's services, and the cost of boarding and clothing him ; but as to that, the jury were better able to judge than we are.   It having been decided that a reasonable prospect of pecuniary benefit may be taken into consideration, it is impossible for us to say, that the jury were not warranted in finding the verdict which they have done."   The general doctrine of these cases is applicable here, and they clearly show that there was no error in rejecting this prayer.   They also support the proposition of the 7th prayer as the true law of the case.

*Judgment affirmed.*

(Decided March 22nd 1866.)