345 F.2d 897
 Hazel H. PERRY, individually and as guardian and next friend of Nancy Elizabeth Perry, Ronald Keith Perry, and Glen Ellen Perry, infants, et al., Appellants,
v.
Wilson Campbell McVEY, Appellee.
 No. 9686.
 United States Court of Appeals Fourth Circuit.
 Argued January 8, 1965.
 Decided May 13, 1965.
 
 Edward C. Donahue, Takoma Park, Md. (William A. Ehrmantraut, John J. Mitchell, Takoma Park, Md., and Weinberg & Weinberg, Frederick, Md., on brief), for appellants.
 Herbert F. Murray, Baltimore, Md. (Clater W. Smith and George Beall, Baltimore, Md., on brief), for appellee.
 Before SOBELOFF and BOREMAN, Circuit Judges, and HUTCHESON, District Judge.
 SOBELOFF, Circuit Judge:
 
 
 1
 In this diversity action arising out of a fatality on U. S. Route #1 south of the town limits of Laurel, Maryland, our particular concern is with the application of the Maryland law of contributory negligence and last clear chance.
 
 
 2
 About 8:30 p. m. on March 23, 1962, the defendant, Lieutenant Wilson McVey of the Maryland State Police, travelling alone in a police car in a southerly direction en route to his home in College Park, Maryland, struck and killed a pedestrian, Abney Perry, who was crossing the road from east to west. The decedent's wife and children and his employer's compensation carrier brought suit in the District Court, and the case was tried to a jury. Both plaintiffs' decedent and the defendant were expressly found to have been negligent, and judgment was accordingly entered for the defendant. The plaintiffs' appeal assigns as error the District Court's submission to the jury of the issue of contributory negligence as well as its refusal of the instruction requested by the plaintiffs on the theory of last clear chance.
 
 
 3
 Route #1 at the place where the defendant's automobile struck the pedestrian is a four-lane macadam highway, forty-seven feet wide with two lanes each for northbound and southbound traffic. A double solid white line divides north from southbound traffic, and dotted white lines separate the two lanes going in the same direction. In the general vicinity the speed limit is fifty miles per hour.
 
 
 4
 On the east side of Route #1 near the point of impact is a truck area identified as the Transit Truck Center, and west of the roadway is another truck area known as the Carolina Truck Stop. From the site of the collision to a point 475 to 500 feet to the north, the roadway is level and straight and the view clear. Still further north, the southbound lanes have an upgrade incline, so that one driving southward from Laurel does not have a clear view of the place where the fatality happened until he comes within 475 to 500 feet of it at the brow of the hill. There are, however, signs on the hill for southbound traffic indicating "Truck Crossing Area" and "Slow," giving additional warning to the driver that he is approaching an area in which special care should be taken.
 
 
 5
 The decedent, wearing a truck driver's uniform of dark color, left the Transit Truck Stop on the east side to cross the highway. Several witnesses testified that the location in question was in dark shadow, a condition aggravated by over-lighting at the Transit Truck Stop.
 
 
 6
 Lieutenant McVey admitted that he was familiar with this portion of the highway, having passed it on his way to and from work for the past twenty-four years. He was aware that there were truck stops on both sides of the road and that the lighting on the west side was extremely poor because of the glare from the east. The defendant's account is that he was in the slow, or curb, lane for southbound traffic from the time he reached the brow of the hill until he struck Perry, and that there were no vehicles in front, behind, or abreast of him in the southbound lanes. He was using his low beams and travelling about forty-five miles per hour.
 
 
 7
 According to the defendant, he never saw Perry before the collision and became aware of his presence only when he heard a "thud." He added, "I could have avoided that man if I had seen him."
 
 
 8
 Franklin Jarrell, an employee of the Transit Truck Stop, left the Carolina Restaurant on the west side of the highway and was crossing over to his place of employment when he met Perry, who was walking in the opposite direction. Jarrell's testimony as to the spot in the roadway where he first saw Perry was inconsistent, naming at different times (1) the middle of the northbound lanes, (2) the center of the roadway at the double white lines, and (3) the southbound lane at the westernmost edge of the road. Jarrell stated that when he came within three or four feet of the east edge of the road he noticed the defendant's vehicle southbound in the slow or curb lane approaching at seventy to seventy-five miles per hour, and he continued to observe it. Just before Perry was struck Jarrell turned and saw him standing about two feet east of the dotted dividing line between the two southbound lanes. The defendant's car, which at this time was approximately twenty to thirty feet from Perry, swerved into the other, or fast, southbound lane. Jarrell did not actually see McVey's vehicle strike Perry, but testified that he heard the brakes applied just as the car struck Perry. He further said that he did not have time to warn Perry of the onrushing automobile.
 
 
 9
 Lieutenant Noble Collison of the Maryland State Police force conducted the police investigation of the accident. Upon his study of debris and broken glass, he gave it as his conclusion that Perry was struck at a point four feet from the western edge of the roadway in the outside or slow curb lane of southbound traffic.
 
 
 10
 Sergeant Waters of the Maryland State Police, called by the defendant and qualified as an expert witness on speed, skid marks and braking reaction times of drivers, expressed his opinion, based on the physical evidence observed at the scene and tests conducted by him, that the defendant was travelling at forty-seven miles per hour.
 
 
 11
 There is no contention by the defendant that there was not sufficient evidence to raise a jury question as to primary negligence on his part.[1] The debate revolves chiefly around the decedent's claimed contributory negligence, and the plaintiffs complain of the District Court's submission of this issue to the jury.[2] Plaintiffs' contention is that there was no direct or eyewitness evidence as to what Perry was doing immediately before and at the instant of the collision. McVey testified that he did not see anyone in his path before striking Perry, so his testimony threw no light on this point. The theory argued by the plaintiffs is that the defendant failed to introduce any evidence of contributory negligence, and in view of the presumption that the decedent was exercising ordinary care for his own safety, the trial court should have granted no instruction on contributory negligence.
 
 
 12
 The court correctly charged as to the presumption of due care on the part of the decedent; but, as the charge recognizes, the presumption is rebuttable. If there had been no evidence of contributory negligence on the part of Perry, as plaintiffs suggest, an instruction on this issue would have been improper; but while there was no direct evidence, there was ample basis in the circumstances for the jury to infer negligence on his part.
 
 
 13
 When last seen by Jarrell, the decedent was standing in the fast southbound lane, and McVey's automobile was moving in the slow or outside lane. Lieutenant Collison testified that the debris from the accident indicated that the impact occurred a few feet from the curb of the outside lane. The jury could have rejected Collison's testimony and accepted plaintiffs' version, suggested by Jarrell's testimony, that McVey swerved from the slow to the fast lane where Perry was standing. On the other hand, the jury could rationally have drawn the inference, as it apparently did, that Perry left a place of temporary safety, where Jarrell last saw him, and either walked or ran into the path of McVey's oncoming car. The jury could also have found that Perry's negligence was aggravated by his venturing across the road in these circumstances in a poorly lit area, dressed in dark clothing. The question of contributory negligence was properly for the jury.
 
 
 14
 Plaintiffs next complain of the denial of their requested instruction presenting the theory of last clear chance. The Maryland Court of Appeals in the recent case of MacKenzie v. Reesey, 235 Md. 381, 201 A.2d 848 (1964), restated what is required for the application of the doctrine:
 
 
 15
 "The doctrine presupposes primary negligence on the part of the defendant, contributory negligence on the part of the plaintiff, and a showing of something new or independent, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence and the plaintiff's contributory negligence." (Emphasis supplied).
 
 
 16
 Thus, in Maryland law the defendant's negligence must have been sequential to and not merely concurrent with the plaintiff's negligence. Critzer v. Shegogue, 236 Md. 411, 418-19, 204 A.2d 180, 184 (1964); Sears v. B. & O. Railroad, 219 Md. 118, 125, 148 A.2d 366, 370 (1959). Where the negligent conduct of the defendant merely continues unchanged up to the time of the accident, the doctrine of last clear chance is inapplicable, since a defendant's primary negligence, without more, may not serve again as the basis for a last clear chance instruction. After his own primary negligence and the decedent's contributory negligence, the defendant must have had a fresh opportunity to avert the consequences. Critzer v. Shegogue, supra; Sanner v. Guard, 236 Md. 271, 276, 203 A.2d 885, 888 (1964); Dunn v. Eitel, 231 Md. 186, 188-89, 189 A.2d 356, 357 (1963); Meldrum v. Kellam Distr. Co., 211 Md. 504, 512, 128 A.2d 400, 404 (1957); Peregoy v. Western Md. R. Co., 202 Md. 203, 95 A.2d 867, 870-71 (1953). There is a total absence of evidence to show that McVey had an adequate opportunity to avoid hitting Perry after learning of Perry's imminent danger.
 
 
 17
 Plaintiffs place some reliance on McVey's statement that "* * * I could have avoided that man if I had seen him" to show that McVey did in fact have the requisite opportunity. This remark, however, is predicated on an hypothesis which McVey explicitly disavows and nothing in the record supports. If we accord to his words their maximum significance viewed most favorably to plaintiffs, it still does not supply the essential basis for a finding that the defendant did appreciate the victim's situation in time to avoid the disaster threatened as a result of the concurrent negligence of the driver and the pedestrian. Thus, whether the jury accepted the defendant's version that he saw Perry at no time before striking him, or the plaintiffs' theory that the defendant saw the decedent at the moment of impact, when Jarrell heard the brakes applied, or shortly before, when the defendant swerved the car,[3] the legal consequence is the same. There is no reasonable foundation for an inference that there was then a sufficient opportunity for the defendant to avert the danger.
 
 
 18
 One may doubt the fairness of turning the decedent's surviving wife and children out of court without any redress because of his act of contributory negligence when the defendant's primary negligence is so outstanding. A rule of comparative negligence might be deemed more consonant with justice. But such considerations of policy, however appealing to common sense and conscience, are not open to us. In light of the oft repeated authoritative declarations of the Court of Appeals of Maryland, any change in the law must come from the independent authority of the state, not from a federal court which is bound to apply state law in a diversity suit. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 The judgment must be
 
 19
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs' theories are that the defendant (1) failed to observe Perry, (2) failed to obey the signs reading "Truck Crossing Area" and "Slow," (3) drove his vehicle at 70 to 75 miles per hour, which is in excess of the speed limit, and (4) violated sections 211(a) and (e) of Article 66½, Annotated Code of Maryland (1957 Ed. as amended), which imposes upon a driver the duty to reduce his speed below the posted limit when approaching the crest of a hill
 
 
 [2]
 The pertinent part of the charge is:
 "[A] pedestrian is required, in the exercise of ordinary care, to look out for approaching traffic before attempting to cross over a boulevard highway such as the Washington Boulevard at nighttime; and, where a pedestrian walks into the path of an approaching car, if he either does not look to see if any cars are approaching, or makes no effort to avoid the car by stopping or stepping aside, although he could easily have seen it in time, he is guilty of contributory negligence.
 "Therefore, you are instructed that, if you shall find, after considering all of the evidence, that the plaintiff's decedent attempted to cross Route 1 without looking out for approaching traffic, or even if he did look, if he either saw the Defendant's car approaching or could have seen it by exercising reasonable care in looking for it, and could therefore have avoided the accident by stopping and waiting for the car to go past, but nevertheless attempted to cross the boulevard, and stepped into the path of the Defendant's car, then he would have been guilty of contributory negligence. If you so find, your verdict must be for the Defendant.
 "* * * in considering the question of contributory negligence, there is a presumption that the decedent Perry was exercising ordinary care for his own safety in crossing the highway at the time of the accident. That is a rebutt[able] presumption; that is to say, it may be rebutted by the evidence. If you find from the evidence that the decedent, Perry, was not exercising ordinary care for his own safety in crossing the highway, you should so find, in spite of the presumption."
 
 
 [3]
 Jarrell said that when the defendant swerved his car into the fast lane he was only 20 to 30 feet from the decedent. There was thus too narrow a margin for the defendant to take effective preventive action