STEVEN MARC COHEN ET AL. *v.* EDITH RUBIN,
Personal Representative of the Estate of Philip Scott
Rubin ET AL.

[No. 1307, September Term, 1982.]

*Decided June 10, 1983.*

The cause was argued before MASON, LISS and GETTY, JJ.

*James R. Eyler,* with whom were *Richard P. Kidwell* and *Miles & Stockbridge* on the brief, for appellants.

*Peter G. Angelos,* with whom was *Howard J. Schulman* on the brief, for appellees.

GETTY, J., delivered the opinion of the Court.

This appeal arises out of an action for negligent operation of an automobile, negligent entrustment of the vehicle by the owner-father to his son and wrongful death. On February 2, 1982, a Baltimore County jury rendered the following verdicts.

1. $2,000.00 compensatory damages in favor of the Estate of Philip Scott Rubin against the defendants, Steven and Sidney Cohen.

2. $250,000.00 punitive damages in favor of the Estate of Philip Scott Rubin against the defendant, Steven Cohen.

3. $200,000.00 compensatory damages in favor of the plaintiff, Milton Rubin, surviving parent of Philip Scott Rubin, against the defendants, Steven and Sidney Cohen.

4. $250,000.00 compensatory damages in favor of the plaintiff, Edith Rubin, as surviving parent of Philip Scott Rubin, against the defendants, Steven and Sidney Cohen.

On April 26, 1982, judgment absolute was entered for the above amounts with the exception of the $250,000.00 punitive damage award against Steven Cohen. The Court reserved its ruling with respect to that award.[1] The defendants noted a timely appeal from the judgments rendered, and the plaintiffs noted a cross appeal.

The appellants'/cross-appellants' issues are:

1. Did the trial court err in submitting the question of the driver's negligence to the jury or, in the alternative, in giving the jury instructions on last clear chance and the duties and burdens of drivers and pedestrians?

2. Was the evidence of negligent entrustment wrongfully admitted and legally insufficient such that submission of that issue to the jury constitutes reversible error?

3. Did the trial court commit prejudicial error in submitting a punitive damage claim to the jury on the issue of negligent entrustment?

4. Did the trial court err in admitting into evidence the autopsy report, photographs of the vehicle showing the decedent's blood and tissue and photographs of the decedent's injuries?

5. Did the trial court err in admitting certain expert testimony relative to the speed of the vehicle at the time of the accident?

---

1. Docket entry dated April 26, 1982, states that the trial judge determined there was no reason for delay and expressly directed the entry of judgment absolute on the compensatory damage verdicts and on the claim of the Personal Representative, pursuant to Md. Rule 605 a.

6. Did the trial court err in failing to admit certain docket entries, depositions and interrogatory responses relating to the alleged negligence of a party dismissed with prejudice prior to trial?

The cross appellants allege that the trial court erred in sustaining a demurrer to the punitive damage claim predicated upon the Wrongful Death Act, Md. Cts. & Jud. Proc., Code Ann. sec. 3-904(d).

## The Facts

On August 21, 1979, at approximately 1:40 a.m., Philip Scott Rubin was fatally injured by a vehicle being driven by Steven Cohen. The accident occurred on Maryland Route 528 (Ocean Highway) near the 74th Street intersection in Ocean City, Maryland. At the time of the accident, Philip Rubin, age thirteen, and a companion, Brian Kovens, were returning to their motel from a "Mr. Donuts" shop located across Route 528 from the motel where the boys were staying.

Immediately prior to the accident the two boys were standing on the traffic median in the center of Ocean Highway approximately twenty feet south of the pedestrian crosswalk. They had previously crossed the southbound lanes of Ocean Highway and as they proceeded across the northbound lanes, Philip, who was several feet ahead of his companion, was struck and killed; Brian Kovens retreated to the median unscathed.

Brian testified that before crossing the northbound lanes they looked to their right and saw car lights "at least two blocks away." A driver proceeding south on Ocean Highway testified that the traffic light controlling north and south bound traffic was green at the time of the accident.

Steven Cohen, between 10:00 p.m. and the time of the accident, had shared two pitchers of beer with a friend, drank four or five beers and smoked a water pipe containing marijuana at his apartment. Sometime after 1:00 a.m., Steven drove Elise and Ellen Wolod from his apartment

toward the Sheraton Hotel where they were residing. After entering Ocean Highway in a northerly direction, Steven challenged another motorist to a race and accelerated his car to seventy-five or eighty miles per hour, according to Elise Wolod who was seated beside the driver.

Miss Wolod stated that Steven ignored her pleas to slow down and she then observed the two boys on an island in the street three blocks ahead. Her testimony concerning the incident is as follows:

A Then, as we were driving, I could see like about three blocks away on the left hand side on an island there were two boys and I saw one boy walk out and then I saw both boys step down, but I saw one start to walk back and one kept on going, and I said, "Steve, slow down, there are two kids out there."

Q At that point, did the boys continue to cross the street?

A The one boy did.

Q What did Steve do when you said to him, "Steve, slow down there are two boys up there?"

A The car did not slow down and then, like, before I knew it, I said, "Steve, stop," and it was too late.

Q What happened then?

A He hit a boy.

Officer William Galten of the Ocean City Police Department determined that the Cohen vehicle left skid marks measuring 255' 8" and 209' 10"; Philip Rubin's body was recovered 55' 2" north of the final resting place of the vehicle. Sgt. Myron Lofgren, a member of the Minnesota State Highway Patrol testified, over objection, as an accident reconstruction expert. He concluded that the point of impact was 32' to 34' from the median island and in the center portion of the middle of the three northbound lanes of Ocean Highway. Sgt. Lofgren further concluded that Philip Rubin was 10' or 20' south of the south line of the crosswalk and

that the Cohen vehicle, as it began its four wheel skid was travelling at 85 miles per hour or 124.6' per second.

Evidence was introduced concerning Steven Cohen's driving record to establish that Sidney Cohen supplied the vehicle involved in the fatal accident when he was aware of his son's tendencies to drive recklessly and in a dangerous manner. This evidence consisted of disciplinary infractions for entering the school parking lot in the wrong direction on two occasions. Sidney Cohen was advised of these infractions by the Assistant Principal.

The trial court also admitted, as to Sidney Cohen, transcripts of three traffic violations committed by Steven Cohen. On April 13, 1978, Steven was charged with operating a motor vehicle at 38 miles per hour in a 25 mile per hour zone near Pikesville Senior High School. Sidney Cohen testified at trial that he was not present at the hearing in District Court; in a prior deposition he stated he was present at the trial for the April 13th incident.

On December 16, 1978, Steven was cited for driving 53 miles per hour in a 30 mile per hour zone. At the District Court hearing, February 13, 1979, Steven was accompanied by his father, Sidney Cohen, who represented to the court that his son was a careful driver and aware of the point system. Steven was granted probation before judgment and was ordered to attend a Baltimore County Traffic School program.

In the early morning hours of March 4, 1979, while still on probation, Steven was charged with striking three vehicles and leaving the scene without providing identifying information. He received a fine and a suspended thirty day jail sentence. Accompanied by his father and legal counsel, Steven appeared before the District Court on a motion for reconsideration of his most recent conviction. He, Steven, had received a notice from the MVA that his license would be suspended effective June 19, 1979.

Sidney Cohen represented to the court that his son contacted the owners of the three vehicles and assured them that they would be reimbursed for their damages. Mr. Cohen

pleaded for a disposition other than conviction and advised the Court that Steven drove "only on family chores". The District Court granted probation before judgment. Two months later, Steven was in Ocean City, driving a car purchased for him by his father in April as a graduation present and Philip Scott Rubin was dead.

## The Law

### Contributory Negligence

Appellants first contention is that the deceased was guilty of contributory negligence as a matter of law by reason of being outside the designated cross-walk and placing himself in a marked cross walk, must be considered in relation to Sec. 21-503 (a) of the Transportation Article. The statute requires a pedestrian shall yield the right of way, under such circumstances, to any vehicle approaching on the roadway.

The Court of Appeals, construing the statute, has consistently held that a pedestrian crossing between intersections raises a factual issue of negligence, but such fact, standing alone, is insufficient to establish that the pedestrian is *prima facie* guilty of negligence. *Nelson v. Seiler,* 154 Md. 63, (1927); *Weissman v. Hokamp,* 171 Md. 197, (1937); *Thursby v. O'Rourke,* 180 Md. 223, (1942); *Love v. State,* 217 Md. 290, (1958); *Boyd v. Simpler,* 222 Md. 126, (1960). No absolute rule as to what does, and what does not, constitute contributory negligence can be formulated that would be applicable to all cases. Like primary negligence, it is relative and not absolute in nature. What constitutes contributory negligence, therefore, depends upon the particular circumstances of each case. *Thursby v. O'Rourke,* supra, *Ford v. Bradford,* 213 Md. 534, (1957). Contributory negligence as a matter of law cannot be found, unless the evidence permits of but one interpretation which shows some distinct, prominent and decisive act in regard to which there is not room for ordinary and reasonable minds to differ. *Thomas v. Baltimore Transit Co.,* 211 Md. 262, (1956) and cases cited.

Sec. 21-504 of the Transportation Article imposes the following duty on drivers in relation to pedestrians:

> 21-504 Drivers to exercise due care. Notwithstanding any other provisions of this title, the driver of a vehicle shall:
>
> (1) Exercise due care to avoid colliding with any pedestrian;
>
> (2) If necessary, warn any pedestrian by sounding the horn of the vehicle;
>
> (3) Exercise proper precaution on observing any child or any obviously confused or incapacitated individual.

The duty imposed on pedestrians (21-503) and the duty imposed on drivers relative to pedestrians (21-504) must be resolved by consideration of the circumstances of each case. In *Dix v. Spampinato,* 28 Md. App. 81, (1975), relied upon by the appellants herein, we determined that directed verdicts for the defendants were proper where the plaintiff was crossing a divided highway and walked in front of a car that had stopped to allow her to continue across the roadway. The driver of the stationary vehicle motioned for the plaintiff to cross and she did so without maintaining a look out and was struck by another vehicle proceeding in the same direction, but in the next lane, to the vehicle that had stopped. We said that the plaintiff had no right to assume that because one driver had yielded the right of way to her, that other drivers lawfully on the highway would do likewise.

The factual scenario of the present case is markedly different than in *Dix.* Here, the plaintiff stopped at the median, looked to his right, saw the vehicle two or three blocks to the south (2 blocks being 610' — 3 blocks 910') and proceeded to cross the roadway where he was struck, after proceeding 32' to 34' from the median, by a vehicle travelling in excess of 80 miles per hour in a 40 mile per hour zone in a well lighted area where no evasive action was taken by the driver until he applied his brakes 101' from the 74th Street intersection, at which point the victim was 80' or 90' ahead and the car

was traversing 124' per second. This is not a situation where ordinary and reasonable minds may not differ and, therefore, the issue of contributory negligence of Philip Scott Rubin was properly submitted to the jury.

## Last Clear Chance

Appellants' next assignment of error is the granting, by the trial court, of an instruction on the Doctrine of Last Clear Chance. The doctrine assumes primary negligence by the defendant, contributory negligence by the plaintiff and a showing of something new or independent, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence and the plaintiff's contributory negligence. *MacKenzie v. Reesey,* 235 Md. 381, 201 Atl. 2d 848, (1964).

The instruction given by the trial court need not be repeated *in toto;* the elements of the doctrine, as set forth in *MacKenzie,* supra, were succinctly stated. The appellants, citing *Perry v. McVey,* 345 F. 2d 897, (4th Cir. 1965) a diversity case applying Maryland law, contend that the instruction should not have been given, because the negligence of the defendant (Cohen) is concurrent, rather than sequential to the presumed negligence of the plaintiff and the defendant's negligence, continuing unchanged until the accident occurs, may not serve again as the basis for a last clear chance instruction.

Appellant's argument overlooks the testimony of Elise Wolod that she observed the two boys from a distance of three blocks, advised the appellant of their presence and admonished him to slow down, all of which he ignored. This testimony, that Steven Cohen was made aware of the dangerous position of the two boys on the highway at a time when he could have availed himself of the opportunity to slow down to avoid the consequences of his original negligence due to driving at a highly excessive rate of speed, was sufficient for the trial court to grant the last clear chance instruction.

*Instructions*

Appellants allege that the trial court committed reversible error in instructing the jury concerning the relative burdens and duties of pedestrians and drivers. Most of the instructions were given to the jury on Friday, January 29, 1982. On Monday, February 1, 1982, the Court gave the following instruction:

"Now, the Court will also give this additional instruction, in view of conflicting testimony that was given as to the nature of the accident itself by witnesses for the plaintiff, and witnesses for the defense. The Court, therefore, will add this to the instructions previously given. In the absence of statutory regulation, the rights of motorists and pedestrians on public highways are reciprocal. Neither the motorist nor the pedestrian has the right to use a public street in disregard of the right of the other to use it. Each must accommodate his movements to the other's lawful use of it. Highways are for the use of everybody, and no one is barred by age or physical condition from the use of them. It is the duty of the pedestrian to use reasonable care in walking on a street, and to act as an ordinary careful person would act under similar circumstances. But the driver of a motor vehicle is required to exercise much greater vigilance and caution to look out for the pedestrian than the pedestrian is required to exercise to look out for the driver. This is because of the fact that the pedestrian cannot usually harm the motorist by the way he uses the street and needs to look only after his own safety, whereas the motorist may kill or seriously injure the pedestrian and therefore should look out for the safety of the pedestrian as well as his own.

Moreover, while ordinary care is required of the driver of a motor vehicle, the vigilance must vary

according to the danger naturally anticipated from the operation of the vehicle. A motorist, when approaching a street intersection, must exercise much greater vigilance than when he is driving between intersections.

As I have indicated, this instruction is an addition to the others that you have received, and should not be highlighted or considered with greater attention and care than any other instructions that the Court has given to you previously."

The instruction given relates to the duty of a motorist when approaching an intersection. The disputed charge is based upon language appearing in *Merrifield v. Hoffberger,* 147 Md. 134, (1925). The language utilized expressly recognizes the object of imposing such specific duty of care on the motorist at the street intersection — that is, to avoid injury so far as reasonably possible — and was not intended as the standard, gauge or measure of the responsibility or duty of the driver to anticipate the presence of pedestrians at the crosswalk, and to have his vehicle under such control as to be able to avoid a collision. *Straughan v. Tsouvalos,* 246 Md. 242, (1967).

Obviously, the appellant herein was approaching street intersections at intervals approximating three hundred feet and, therefore, he had a duty to keep the vehicle under control to avoid any collision with pedestrians or vehicles at the intersection. Even if we assume that the instruction was erroneously given, either because its applicability is restricted to those situations not covered by applicable statutes, or because the pedestrian herein was not within the crosswalk, we must consider the instruction, not in isolation, but as a component of the instructions given as a whole. Judge Sfekas carefully articulated the duties of both drivers and pedestrians lawfully utilizing the highway, he correctly stated the law with regard to primary negligence, contributory negligence and proximate cause. Taken in its entirety, we do not believe the instructions given were prejudicially inadequate. If jury instructions, when read as a

whole, clearly set forth the applicable law, there is no reversible error. *Alston v. Forsythe,* 226 Md. 121, 172 A.2d 474, (1961); *Kable v. State,* 17 Md. App. 16, 299 A.2d 493, (1973); *Beckner v. Chalkley,* 19 Md. App. 239, (1973).

## Negligent Entrustment

Next, the appellants attack the admission of certain evidence of negligent entrustment and in the submission of that issue to the jury. Specifically, the appellants' view as error the admission of High School disciplinary infractions involving Steven Cohen's entering the school parking lot on two occasions in the wrong direction; admitting into evidence three trial transcripts of motor vehicle violations where probation before judgment had been granted and admitting one transcript of a motor vehicle violation where no juvenile waiver had been obtained.

The definition of negligent entrustment is set forth in Restatement (Second) of Torts, Sec. 390 (1965):

> "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." *Kahlenberg v. Goldstein,* 290 Md. 477, 431, A. 2d.

The doctrine was first applied by the Court of Appeals in *Rounds v. Phillips,* 166 Md. 151, 170 A. 532, (1934). Appellants' reliance on a line of cases recognizing that probation before judgment avoids any finding of guilt, *State v. Jacob,* 234 Md. 452, (1974), *Stevens v. State,* 27 Md. App. 460, (1975), fails to distinguish between a criminal judgment offered in a civil proceeding as proof of the underlying facts and offering evidence of hazardous driving for the limited

purpose of establishing that Steven Cohen was not a responsible driver and his father had knowledge that Steven posed an unreasonable risk of physical harm to himself and others.

Additionally, the testimony established that Sidney Cohen, at the June 12, 1979 hearing in District Court, represented that his son, due to driving infractions, was only permitted to drive on family errands. By August, 1979, Sidney had given complete control of the Camaro to Steven.

Article 27, Sec. 641 of the Maryland Code, applicable here, was amended by Chapter 527, (1975) to provide that probation prior to judgment could be entered by a court exercising criminal jurisdiction:

> "Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense. . ."

The legislative rewriting drastically changed the concept of this section virtually eliminating probation without verdict in the orthodox sense. *Stevens v. State,*[2] supra. The issue of negligent entrustment was properly submitted to the jury.

Appellants further contend that permitting the jury to consider the awarding of punitive damages, based upon negligent entrustment by Sidney Cohen, constitutes reversible error. The standard for submitting the issue of punitive damages to the jury is set forth in *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 297 A. 2d 721, (1972). The conduct must amount to a wanton or reckless disregard for human life in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice.

The trial court instructed the jury that if either Steven Cohen or Sidney Cohen exhibited extraordinary or outrageous conduct amounting to a wanton or reckless disregard for human life, punitive damages could properly be assessed. A punitive damage verdict was returned

---

2. *Stevens,* supra, was decided on the law prior to the 1975 amendments.

against the driver, Steven Cohen, and compensatory damages only were assessed against the father, Sidney Cohen. The verdicts indicate that the jury understood the distinction contained in the court's instructions and did not attempt to punish Sidney Cohen by their determination that he should not be assessed punitive damages. Assuming, without deciding, that the issue of punitive damages for negligent entrustment was not warranted on the facts of this case, the error, if any, was harmless.

## Evidence

The next assignment of error relates to the introduction into evidence of the autopsy report and various photographs of the vehicle involved and two black and white prints depicting some of the injuries sustained by the deceased. The admission of photographs is within the sound discretion of the trial judge. *Rose v. State Clifton T. Perkins Hosp.,* 26 Md. App. 358, (1975). The trial judge carefully reviewed each exhibit and rejected all colored photos and others that graphically featured the decedent's head wounds. He concluded that the photographs of the vehicle were relevant due to conflicting testimony concerning the point of impact. He admitted two photographs of the deceased due to the material discrepancy concerning the speed of the Cohen vehicle. We cannot conclude, and do not find, the actions of the trial court to be either arbitrary or an abuse of discretion.

## Expert Testimony

Appellants except to the expert testimony offered by Lt. Leonard and Sgt. Lofgren as to speed, because Leonard's testimony was based, in part, on conversations with Officer Galten and Lofgren's opinion was based to some degree on the conclusions reached by Leonard. It is generally true that the opinion of an expert may not be based in whole or in part on the conclusions and opinions of other witnesses. *Jackson v. Jackson,* 249 Md. 170, (1968); nor on reports of others if

they contain only opinions, inferences or conclusions. *Pennsylvania Threshermen and Farmers' Mut. Cas. Co. v. Messenger,* 181 Md. 295, (1943), 2 Wigmore, *Evidence,* Sec. 657 (3d. ed. 1940).

An expert witness who has heard the entire testimony in a case and who assumes the truth of it all, where it is not conflicting, may, however, base his opinion upon *facts* testified to by other witnesses, or upon *facts* contained in reports or examinations made by third parties. *Wilhelm v. Burke,* 235 Md. 412, (1964), cited in *Consol. Mech. Contractors v. Ball,* 263 Md. 328, (1971). Experts, moreover, may rely on opinion evidence, based in part on reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession. *Jenkins v. United States,* 307 F. 2d 637, (D.C. Cir. 1962), cited in *Consol. Mech. Contractors,* supra.

Lt. Leonard in forming his opinion as to the speed of the Cohen vehicle, utilized the findings with respect to skid marks, photographs, weather and road conditions. His opinion was based primarily on the length of the skid marks and the coefficient of friction on the road surface. Four road tests were conducted at the site of the accident to establish the coefficient of friction. Based upon a skid mark of the Cohen vehicle of 245.7' [3] and coefficient of friction of .95, Lt. Leonard determined by resort to established manuals that the minimum speed of the Camaro was eighty-four miles per hour at the point of impact.

Sergeant Lofgren sat through the entire trial prior to testifying. By mathematical equations and computations he was able to determine the coefficient of friction and the approximate speed of the Cohen vehicle based upon the skid marks testified to and the results of the skidding tests performed at the accident location. This witness determined that if the Cohen vehicle had been travelling at 45 miles per hour, as testified to by Steven Cohen, from the point where

---

**3.** Lt. Leonard reduced the measured skid mark of 255.7 by 10' due to the Cohen vehicle coming in contact with either a telephone pole or berm.

the skid marks first appeared on the roadway, the vehicle would have come to a complete stop before the point of impact with the deceased.

Both Lt. Leonard and Sgt. Lofgren were accepted by the court, after lengthy examination by counsel, as being experts in accident reconstruction. Our review of the expert testimony establishes that the conclusions reached by the experts were based upon scientific data, mathematical computations and resort to established facts typically relied upon by experts in the field. We perceive no error; the purpose of expert testimony is to assist the trier of the facts.

## Negligence of J. C. C.

The appellants' contention that they should have been permitted to argue the negligence of J. C. C., the organization supervising the deceased and his companions, is frivolous. Prior to trial, the appellees dismissed their suit against J. C. C. with prejudice. A motion *In Limine* precluded the appellants from raising the issue of J. C. C.'s negligence as a proximate cause of the accident. The appellants did not file a cross claim against the J. C. C.; the dismissal of that organization as a party defendant cannot reasonably be considered as being prejudicial to the appellants. Permission granted to two thirteen years olds to cross the street to purchase doughnuts cannot seriously be advanced as a proximate cause of the death of one of the two struck by a vehicle travelling eighty-four miles per hour while being operated by an inexperienced driver who is to some degree under the influence of alcohol, drugs or a combination thereof.

## Wrongful Death—Punitive Damages

The cross appellants contend that the court erred in sustaining a demurrer to a punitive damage claim in the Wrongful Death Action.

The statute involved, Courts and Jud. Proc. Art. 3-904 (d), as amended by Chapter 352, Laws of Maryland, (1969), provides:

> (d) Damages if spouse or minor child dies. — For the death of a spouse, minor child or parent of a minor child, the damages awarded under subsection (c) are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable.

At common law a right of action for wrongful death did not exist. *Stewart v. United Elec. Light & Power Co.,* 104 Md. 332, 65 A. 49 (1906). The Maryland Legislature, in 1852, enacted the wrongful death act that, for the first time, gave a right of action under certain conditions to designated relative of a deceased person, as opposed to the personal representatives of the decedent, where death resulted from a wrongful act or negligence. The Act is nearly identical to England's Lord Campbell's Act (9 and 10 Vic. ch. 93), enacted six years earlier.

Prior decisions of the Court of Appeals concerning an award of punitive damages in wrongful death cases include *Balt. & Ohio R.R. Co. v. State ex rel. Kelly,* 24 Md. 271, (1866) and *Smith v. Gray Concrete Pipe Co. Inc.,* 267 Md. 149, (1972). In *Kelly,* supra, punitive damages were not sought and the only reference thereto was a statement by the court that: "As we have recently held, punitive damages are not recoverable in cases such as this under the Act of 1852." The Court was apparently referring to an unpublished opinion.

In *Smith,* supra, Judge Levine stated for the Court that punitive damages were recoverable in suits by personal representatives. The reference to wrongful death actions in

*Smith* is merely dicta wherein the Court stated that "the rationale for precluding exemplary damages in wrongful death cases has no application to an action brought by a personal representative." Neither case, therefore, has directly addressed the question.

In the present case we are faced with the precise question as to the recovery of exemplary damages under the wrongful death statute, Sec. 3-904 (d). Prior to the enactment of 3-904 (d) in 1969, recovery in these cases was limited to pecuniary loss. *Barrett v. Charlson,* 18 Md. App. 80, 305 A 2d 166 (1973).

The preamble to section 3-904 (d) states clearly the legislative intent embodied in the amendment.

> WHEREAS, Strict application of this test (pecuniary loss) . . . in the case of a minor's death . . . results in a minus figure, since the value of his services lost by death in modern society is generally much less than the probable cost of raising the child; and
> WHEREAS, It is desirable to substitute a valid test for determining damages for the fictional test of the 'pecuniary benefit' rule in which emotional facts frequently enter; now therefore * * *.

Amelioration of the harsh "pecuniary rule" was all the legislature intended by the 1969 amendment. We do not accept cross appellants' argument that punitive damages are recoverable because the statute does not expressly preclude or limit such recovery. The negligence causing death statute is in derogation of the common law and, therefore, should be strictly construed. *McKeon v. State, Use of Conrad,* 211 Md. 437 (1956); *Flores v. King,* 13 Md. App. 270, (1971). We are of the opinion, therefore, that punitive damages are not

recoverable in cases arising under the wrongful death statute unless and until the legislature so provides.

> *Judgments affirmed.*
> *Three-fourths costs to be paid by appellants; one-fourth costs to be paid by cross-appellants.*