## McKEON *v.* STATE, Use of CONRAD et al.

[No. 38, October Term, 1956.]

438

*Decided December 12, 1956.*

440

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*David W. Byron* and *Irvine H. Rutledge,* with whom were *Lane, Bushong & Byron* on the brief, for the appellant.

*Ernest V. Wachs* for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

The appellant was the driver of an automobile which was involved in a collision with an automobile driven by Evelyn Conrad, a sister of the appellees, near Hagerstown on July 5, 1954. Evelyn Conrad died five days later of injuries received in the collision. Two suits were filed against him, one by the Executor for. medical expenses, pain and suffering and one by the appellees for pecuniary loss under Article 67 generally referred to as "Lord Campbell's Act".

The jury returned a verdict in favor of the Plaintiff in the Executor's suit of $8,538.71. In the Lord Campbell's suit the jury found on the issues submitted to them that the sisters were "wholly dependent" upon Evelyn Conrad and returned a verdict of $7,650,—apportioned $3,600 to Olive and $4,050 to Rosella.

This appeal is taken in the Lord Campbell's suit only and is from the refusal of the trial court to instruct the jury that the appellees were not "wholly dependent" upon their deceased sister, Evelyn Conrad.

At the time of her death, Evelyn Conrad lived in Arlington, Va., and worked in Washington as a Clerk for the Department of the Army. She was 57 years old and unmarried. She left surviving her three brothers and three sisters, including Olive and Rosella. The three surviving brothers were married and had families of their own. At the time of their sister's death in 1954, Olive was 69 years of age, and Rosella 67. Like their sister, Evelyn, they had never married. The two

lived together on the main street in Chest Springs, Pa., in the house which had belonged to their mother, whose death occurred in 1933. Under the terms of her will, their mother left to her children this house, an adjoining lot, owned by Evelyn at the time of her death, on which a gas station was located, and three other lots in Chest Springs. The will provided, in part:

"That as long as two or more of those children who have not married, wish to live in the home at Chest Springs, that this part of the estate and the adjoining lot shall not be sold."

The support furnished by Evelyn to her two sisters consisted of a check for $15 sent to them each month, which was supplemented by a check in the amount of $25 each month from the tenant of the gas station owned by Evelyn, making monthly cash payments to the two sisters together of $40. Both sisters testified that Evelyn paid, in addition, bills which Olive estimated came to $35 a month. These took the form of contributions to their church, insurance premiums on Rosella's life, doctor bills for Rosella and taxes and repairs to the house. Both sisters estimated they collectively received from Evelyn the equivalent of $75 per month.

The house in which the sisters lived was a seven-room three-bedroom house. Olive testified it was worth $2,400; and that she and her sister paid no rent.

In addition to their interest in their mother's property, Olive and Rosella had an interest in the estate of their deceased brother, Alex, who died in 1951, and whose estate apparently had not been distributed at the time of the trial of this case. Bernard Conrad, a brother and Executor of Evelyn's estate, stated he did not know the size of his deceased brother's estate, but Olive testified it was $995, which she said would go to her father's and mother's estates. Olive also testified that her brother left her, Rosella, and Evelyn his share in the homeplace. Olive estimated the value of the three lots in Chest Springs, left under her mother's will, at $50 apiece.

Both sisters testified they were not employed at the time of Evelyn's death. Rosella stated she never worked in her life.

Olive stated she had not been employed for twenty-six years since she had lost her employment. Olive testified she never required medical care, but Rosella said she required it constantly.

The sole question here presented is whether Olive and Rosella Conrad were, "as a matter of fact", "wholly dependent" upon their deceased sister, Evelyn Conrad, at the time of her death July 10, 1954, so as to enable them to bring suit under Art. 67, Sec. 4 of the Code of Maryland (1951). The appellant, of course, contends the facts do not show them to have been "wholly dependent" under the statute, and the appellees maintain the facts do.

Prior to 1852, under the common law, Maryland permitted no recovery for pecuniary loss suffered by a relative of one killed by the negligence of another. In that year, the Legislature enacted Ch. 299 of the Acts of 1852, which provided an action at law for the benefit of a wife, husband, parent and child of a person whose death shall have been caused by the wrongful act, neglect or default of another, against the person wrongfully causing said death. The list of persons entitled to recover under the then Sec. 2 of the above Act, remained the same until 1937, when it was enlarged to permit recovery by the mother of an illegitimate child and by an illegitimate child when the deceased person was the mother of such child. In 1952, the Legislature again added to this list by including relatives of the deceased who met certain dependency qualifications, but only if there were no surviving wife, husband, parent or child. The pertinent part of the present law, (Art. 67, Sec. 4), reads:

> "Every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused or if there be no such person or persons entitled, then any person related to the deceased by blood or marriage, who, *as a matter of fact,* was *wholly dependent* upon the person whose death shall have been so caused." (Italics supplied.)

It will be noted in the above, if the action be brought by

the surviving wife, husband, parent or child, he or she must establish the amount that the deceased had, and probably would continue to have, contributed to his or her support, but need not prove dependency. More distant relatives, to the contrary, must prove they were "wholly dependent" in order to have any standing in court. This seems to be the effect of the words "as a matter of fact". In some of the Workmen's Compensation statutes, close relatives are extended a presumption concerning dependency, while more remote ones are not, but are required to establish dependency by affirmative proof. This, clearly, is the import of "as a matter of fact" in our statute. In *Jones v. Jones,* 45 Md. 144, 159, this Court cited, with approval, a case that held evidence of cohabitation and repute was insufficient to establish a first marriage, notwithstanding both parties to it were dead, but such marriage should "as an actual fact" be proved; that all mere presumption of the previous marriage, founded simply upon habit and repute, was at once overthrown, and it then became incumbent to establish the alleged marriage by more direct proof.

We are strongly urged to hold that our "Lord Campbell's Act" is in derogation of the common law, and therefore should be strictly construed. This Court has so held on at least two occasions: *Demczuk v. Jenifer,* 138 Md. 488, and *Dunnigan v. Cobourn,* 171 Md. 23, and, we see no necessity to hold to the contrary now.

The primary and fundamental purposes in construing and interpreting a statute are to ascertain, and to carry out, the true intention of the law. The object of all rules, canons of construction and maxims is to act as aids and guides in discovering the real legislative intent. They are not completely rigid and intractable and must give way to a clear intention to the contrary.

"Strict construction" means that a statute is not to be construed beyond its natural meaning, (*In re Bragg's Estate* (Mont.), 76 P. 2d 57, 63). The term is not a precise but a relative expression varying in degree according to the character of the law being construed, (*Cummins v. Kansas City Pub. Serv. Co.* (Mo.), 66 S. W. 2d 920). It is not the exact

converse of liberal construction for it does not consist in giving the words of a statute the narrowest meaning of which they are susceptible, (*Ibid.*), and "strict construction" is in no way violated if the words of a statute are given their full meaning, (*Franklin County Coal Co. v. Ames* (Ill.), 194 N. E. 268). The term "excludes mere implications, but does not require a literal and blind adhesion to mere words." (Dissenting opinion in *Bowman v. Little,* 101 Md. 273). See, to like effect, *Glickfield v. State,* 203 Md. 400.

"Dependent" has been defined by this Court as one who relies wholly or in part upon another for the reasonable necessities of life. *Havre de Grace Fireworks Co. v. Howe,* 206 Md. 158. *Funk and Wagnalls' New Standard Dictionary* defines "wholly" as follows: "To an extent or degree that nothing remains to be added; completely." It readily and immediately is seen that a literal and too narrow construction would violate the legislative intention; because, there is hardly one in ten thousand who is "completely" or 100% dependent on another. We cannot assume an intention that would accomplish little, if anything, by way of relief. However, the phrase "wholly dependent", does have a meaning and it is our responsibility to ascertain it. In 1944, our Workmen's Compensation Act provided certain persons should be presumed to be "wholly dependent". These words were not there, nor are they here, precisely defined; but, this Court stated that in numerous cases in other jurisdictions, the facts had been discussed, and the Courts had said whether receipt of other income of various kinds prevented one from being "wholly dependent" and set forth what the Court of Appeals termed "The almost universal rule" for determining the same. *Larkin v. Smith,* 183 Md. 274. Eight years after this decision, the Legislature adopted the provision we have under consideration, using, as we have seen, the same phrase "wholly dependent". With this sequence of events, we think the conclusion inescapable that the clear legislative intention is manifest that the Legislature intended the same rule to be applied to this statute as announced, and applied to the other. After all, it does not seem probable that a deliberative body such as our Legislature, excepting on very rare occasions, would use

the same wording in two similar statutes, and expect and intend it to receive two different interpretations. We do not consider, in announcing the rule below, it a violation of a strict construction of this statute; but, if it were necessary, we would decide the Legislature's intention is so clear and manifest, the rule of construction would have to yield. We are unwilling to hold "wholly dependent" means "wholly destitute". We hold the rule to be applied to test whether proof of other property and/or income of various kinds prevents a person from being "wholly dependent" on another is as follows: Total dependency exists where the dependent subsists entirely on the income of the deceased; but, in applying this rule courts will not deprive claimants of the rights of total dependents, when otherwise entitled thereto, on account of temporary gratuitous services rendered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated. In other words, the individual has no consequential source or means of maintenance other than the income of the deceased. See *Larkin v. Smith, supra.*

This conclusion is further impelled by the decision, over twenty years ago, of this Court in *Storrs et al. v. Mech et al.,* 166 Md. 124, wherein it was held, "There is nothing in conflict between the provisions of article 67, 'Lord Campbell's Act,' and article 101, 'Workmen's Compensation.' They both unquestionably deal with recovery for injuries resulting in death. The two statutes are *in pari materia* and must be construed together." It was also held therein the Workmen's Compensation Law added to section 2 of the Lord Campbell's Act an additional class that may sue under the provisions of said act; and, the insurer under the Compensation Law, whoever he may be, can sue the tort-feasor, who caused the death of the deceased. See also *Clough & Molloy v. Shilling,* 149 Md. 189, and *Mech v. Storrs,* 169 Md. 150.

Appellant argues the sisters had shelter from another source than the deceased; and, as shelter was an integral part of subsistence, the sisters could not have been wholly dependent on deceased, as a matter of law. He argues the sisters had a life

estate in the house in which they lived; appellees say it was a conditional life estate. That depended upon the law of Pennsylvania, but, if the property were in Maryland, they would have had neither. At most, the provision in the will appears to permit any one of the mother's unmarried children to live therein, as long as another unmarried one desires to do the same. In addition, they each owned a 2/9 interest in the remainder of the house; one of them thought it (the house) was worth $2400. They each also had an interest, amounting to approximately $150 in their brother's estate, that had never been settled; and each a 2/9 interest in 3 lots valued at $150. The deceased furnished them every cent upon which they subsisted; *paid the taxes on, and repairs for, the house;* and insurance and doctor bills. Without the contributions of the deceased to pay taxes and repairs, it seems the appellees could not even have continued to use the shelter afforded them under their mother's will. Under these circumstances, we do not feel justified in holding, as a matter of law, the sisters were not wholly dependent.

Appellant cited to us the cases of *In re McDonald* (Mass.), 118 N. E. 949, and *In re Derinza* (Mass.), 118 N. E. 942. They are compensation cases and similar; we will consider the former, as it is the one more favorable to him. The Massachusetts statute required the claimant to be "wholly dependent" for support upon the *wages* of the deceased. The wife owned a lot and 8 room house in good repair. It was held this did not justify a finding that the widow was "wholly dependent" on the deceased's earnings. This same Court had, however, just 4 and 3 years, respectively, prior thereto decided the cases of *In re Buckley* (Mass.), 105 N. E. 979, and *In re Carter* (Mass.), 108 N. E. 911. In the former, it was held where the claimant had an interest (the same being at most a life interest) in the house in which she and her sisters lived, it did not prevent her from being "wholly dependent"; and, in the latter, a daughter, who for 3 years lived in a house with her mother, away from her father and without his paying the rent, and, who had saved $100, was held to be "totally dependent". It will be seen that the Court made an entirely different holding on the ownership of a house of considerable

proportions in good repair, and the mere occupancy of a house or holding an interest therein.

In *Harvey v. Roche & Son,* 148 Md. 363, this Court upheld a holding of total dependency on the husband where the wife had been living apart from him, and, in addition to what she received from him, $10 per week from a boarder. And in *Larkin v. Smith, supra,* the claimant was living in a house partially owned by her.

We are of the opinion the estate (other than the remainder) held by the sisters, in the case at bar, in this house was of such little value and so nebulous in nature it is almost covered by the maxim *"De Minimis Non Curat Lex"*.

*Judgment affirmed, with costs.*