JOSEPH A. BARRETT ET UX. *v.* RANDALL J. CHARLSON

[No. 556, September Term, 1972.]

*Decided June 4, 1973.*

The cause was argued before GILBERT, MENCHINE and SCANLAN, JJ.

*Samuel Intrater* for appellants.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellants, Joseph A. Barrett and Pauline C. Barrett, were the parents of a twenty year old, unmarried daughter, Deborah Barrett, who was killed in a single vehicle automobile accident occurring on Burdette Road, Bethesda, Montgomery County, in the early morning hours of May 31, 1970. They brought an action under the wrongful death statute [1] against the driver of the car in which Deborah was riding as a passenger at the time she was killed.

Appellants' declaration alleged that they "have sustained pecuniary loss and have further suffered the loss of society, companionship, comfort, filial care and attention, mental anguish, emotional pain and suffering." No proof of pecuniary damages was introduced at the trial. There was evidence of mental anguish and pain and suffering experienced by the appellants. Several times it became necessary for the court to recess the trial in order to permit Mrs. Barrett to regain her composure, the trial court observing on one such occasion that: "This woman [Mrs. Barrett] is suffering from a very serious personal injury."

At the conclusion of the evidence, the trial judge directed a verdict against the appellee on the question of negligence and submitted the case to the jury solely on the issue of damages. The evidence was clearly sufficient to establish the appellee's negligence and he has not cross appealed from the ruling on this issue.

The jury awarded the appellants a total of $2500.00 in damages. Appellants filed a motion for a new trial, alleging the verdict to be grossly inadequate and complaining of the instructions given by the trial judge on the question of

---

1. Article 67, Section 4(a) of the Maryland Code.

damages for mental anguish and pain and suffering, as discussed below. The motion was denied and judgment was entered on August 4, 1972.

The issue presented on the appeal is whether a 1969 amendment to the wrongful death statute, under which the parents of a minor child for the first time were given the right to collect damages for *solatium,* including mental anguish, emotional pain and suffering and related damages, was intended to restrict these new categories of recoverable damages solely to a period equivalent to the child's minority, had he or she lived.[2] The question is one of first impression in Maryland. For the reasons set forth below, we conclude that the damages for *solatium* which the General Assembly authorized for the first time in the 1969 amendment to the wrongful death statute are not so limited.

Article 67, Section 4(b), enacted in 1969, reads as follows:

> "(b) In the case of the death of a spouse or a minor child, the damages awarded by a jury in such cases *shall not be limited or restricted to the 'pecuniary loss' or 'pecuniary benefit' rule, but may include* damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable." (Emphasis added.)[3]

During the course of ruling on motions for directed verdicts in chambers, the trial judge indicated that it was his view that Section 4(b) was to be "narrowly construed." Subsequently, in his instructions to the jury, he adhered to that view when he charged it as follows:

> "Taking into consideration these matters, you should award to the plaintiffs such money damages as in your opinion would be fair and just

---

**2.** Because we resolve this issue in appellants' favor, we do not reach other contentions of the appellants alleging improper or prejudicial remarks on the part of appellee's trial counsel during the course of closing argument.

**3.** Chapter 352, Laws of Maryland (1969).

compensation for the mental anguish, emotional pain and suffering, loss of society, companionship, comfort and filial care which you may find they suffered as a consequence of the accident at that time and *up to the time Deborah would have reached her twenty-first birthday."* (Emphasis added.)

The following colloquy between the court and counsel for the appellants then took place:

"THE COURT: Do you have any exceptions, Mr. Intrater?

"MR. INTRATER: Yes, if your Honor please.

First of all, I except to that part of your instruction which limits the pain and suffering up to the time that Deborah would have reached her 21st birthday.

"THE COURT: I understand your argument or your exception on the limit of pain and suffering. *I have indicated to you before this my belief that that subsection (b) is a statute which modified the prevailing rule as to damages and that it is to be narrowly construed. I believe that the elements of damages which may be considered in these cases are limited to the minority of the child.* So I will overrule your exception." (Emphasis added.)

The appellee argues that the appellants did not preserve the issue of whether appellants' "mental anguish" could be

considered beyond the time their daughter would have reached her 21st birthday because appellants' counsel used the words "pain and suffering," in objecting to the court's instructions. We disagree. A reading of the record makes it clear that appellants' counsel was merely making a shorthand reference to all of the several categories of damages now authorized by Section 4(b) of Article 67, and referred to by the trial judge during a discussion in chambers and then again in his formal charge to the jury. Under the circumstances, both opposing counsel and the court could not have failed to comprehend the ground of exception or the claim of error in the instruction to which it was directed. *Kowalewski v. Carter*, 11 Md. App. 182, 195, 273 A. 2d 212 (1971); *Kraft v. Freedman*, 15 Md. App. 187, 289 A. 2d 614 (1972). There was no violation of Rules 554(e) or 1085.[4]

Prior to 1852, under the common law, Maryland permitted no recovery for pecuniary loss suffered by a relative of one killed by the negligence of another. In that year, the General Assembly enacted Ch. 299 of the Acts of 1852, which provided an action at law for the benefit of a wife, husband, parent and child of a person whose death shall have been caused by the wrongful act, neglect or default of another, against the person wrongfully causing such death. *McKeon v. State, Use of Conrad*, 211 Md. 437, 442, 127 A. 2d 635

---

**4.** Also lacking in merit is the appellee's argument that there was no error in instructing the jury to limit damages for mental anguish to the date when the decedent would have reached her 21st birthday because the appellants did not pray, in their declaration, for damages broader than those which were allowable in the judge's instructions. The declaration alleged that the appellants "have ... suffered mental anguish, emotional pain and suffering." Appellee apparently objects to the appellants' failure to allege specifically that their mental anguish and emotional pain and suffering were continuing in nature. We think that this is an artificial and strained construction of the language of the declaration, a pleading by which the appellee was neither misled nor surprised. Nicholson v. Blanchette, 239 Md. 168, 210 A. 2d 732 (1965). Where mental pain and suffering are a necessary and natural result from the character of the injury complained of, it is not necessary to specifically so aver. 22 Am. Jur. 2d 375. Arenson v. Butterworth, 243 Iowa 880, 54 N.W.2d 557, 563 (1952). Moreover, the appellee never requested an instruction from the trial court that the appellants were to be limited in their damages solely to the mental anguish and emotional pain and suffering experienced up to the date of the filing of the declaration. It is too late for him to make an issue of the point now. Rule 1085.

(1956). Since 1852, changes have been made in the law, but the measure of recovery which spouses and parents of minor children could collect in wrongful death actions remained unchanged until the General Assembly enacted the 1969 amendment, the interpretation of which is in issue on this appeal.

In *Wittel v. Baker*, 10 Md. App. 531, 533-34, 272 A. 2d 57 (1970), we reviewed generally the nature of damages recoverable under the Maryland version of the Lord Campbell Act prior to the 1969 amendment to Article 67. We said:

> "This provision as to damages was also contained in the statute of 9 and 10 Vic., ch. 93, known as Lord Campbell's Act, enacted by the English Parliament in 1846. It did not prescribe in terms on what principle the damages were to be assessed. However, when the question of damages first reached our Court of Appeals in *B. & O. R. R. Co. v. State, Use of Mahone*, 63 Md. 135, the Court found it to be settled law under English decisions that damages are not to be given as a solatium for grief or mental suffering but must be founded on pecuniary loss, citing *Blake v. R. R. Co.*, 18 Q. B. 93 and *Franklin v. R. R. Co.*, 3 Hurl. and Nor. 211. Thus damages were based on the pecuniary benefit the person injured by the wrongful death had in the life of the deceased and the claim must be founded on a pecuniary loss, actual or expected. 'The right to maintain the action is therefore based on the pecuniary interest of the plaintiff in the life of the person killed, and the value of such interest is the measure by which damages are to be allowed.' *B. & O. R. R. Co. v. State, use of Mahone, supra*, at 146. The Court of Appeals consistently adhered to this construction. As recently as 23 January 1969 when it decided *Hutzell v. Boyer*, 252 Md. 227, it quoted with approval *United States v. Guyer*, 218 F. 2d 266, 268 (4th Cir. 1954): '*Under the law of Maryland the measure of recovery for wrongful death * * * is*

*the present value of the pecuniary benefit which the [survivors] might reasonably have expected to receive from [the deceased]* if he had not been killed." (Emphasis added.)

Maryland has also limited further the measure of the pecuniary damages which could be awarded to the parents of a minor child by confining such damages to the services the child could have rendered during its minority only. In *State, Use of Coughlan v. Baltimore & Ohio Rail Road Co.,* 24 Md. 84 (1866), the Court of Appeals held:

*"The law entitles the mother to the services of her child during his minority only,* the father being dead; beyond this, the chances of survivorship, his ability or willingness to support her, are matters of conjecture too vague to enter into an estimate of damages merely compensatory.

"According to the appellant's theory, the mother and son are supposed to live on together to an indefinite age; the one craving sympathy and support, the other rendering reverence, obedience and protection. Such pictures of filial piety are inestimable moral examples, beautiful to contemplate, but the law has no standard by which to measure their loss." *Id.* at 107-08 (emphasis added).

The holding in *Coughlan* has been consistently adhered to over the years. Illustrative cases are: *Baltimore and Ohio Railroad Company v. State, Use of Hauer,* 60 Md. 449, 467 (1883); *The Agriculture and Mechanical Association of Washington County v. State, Use of Carty,* 71 Md. 86, 100, 18 A. 37 (1889); and *State, Use of Parr v. Prince George's County,* 207 Md. 91, 107, 113 A. 2d 397 (1955). The rule thus followed placed Maryland among a minority of jurisdictions in which no award could be made to parents of a deceased minor child for the loss of benefits which they might reasonably have expected from the child after he reached his majority. *Death of Infant — Measure of Damages,* 14 A.L.R.2d 485, 509-10 (1950); *see, e.g., Clevenger v. Kern,* 100

Ind. App. 581, 197 N. E. 731 (1935); *Covell v. Colburn*, 308 Mich. 240, 13 N.W.2d 275 (1944).[5] A majority of the States, on the other hand, have held that an award to the parents of a deceased minor child may be based in part on the value of pecuniary benefits which, according to the evidence, the parents reasonably might have expected to receive from the child after he attained his majority. 14 A.L.R.2d at 506; *see, e.g., Hord v. National Homeopathic Hospital*, 102 F. Supp. 792 (D.D.C. 1952), *aff'd*, 204 F. 2d 397 (D.C. Cir. 1953); *Caldwell v. Abernathy*, 231 N. C. 692, 58 S.E.2d 763 (1950); *Seaboard Coast Line Railroad Co. v. Duncan*, 123 Ga. App. 479, 181 S.E.2d 535 (1971)

Two grounds were assigned in justification of the Maryland rule that in a wrongful death action a parent may only recover for the pecuniary loss suffered as a result of deprivation of the child's services during the period from the date of the minor's death to the date on which the child would have reached his or her majority. First, it was said that the parent is lawfully entitled to the services or earnings of his child only during the latter's minority. Second, the claim was that it would be too speculative to contemplate the financial assistance which a minor might render the parents after he or she had reached majority. The Court of Appeals adverted to those two reasons in *State, Use of Strepay v. Cohen*, 116 Md. 682, 688-89, 172 A. 274 (1934), observing that:

> *"During infancy the parent is entitled to the services and earnings of the minor, who has no capacity to contract nor right to leave the custody and control of the parent, but is subject to parental authority until the day of his majority.* His status being thus fixed by law during his minority, what the child may be able or willing to do, when infancy ends, and the right arises to leave the custody and control of the parent and act independently with

**5.** The Covell case, holding that beneficiaries could not recover for the loss of benefits which they might reasonably expect from the child after he had attained his majority, was overruled in Thompson v. Ogemaw County Board of Road Commissioners, 357 Mich. 482, 98 N.W.2d 620 (1959).

respect to contract, property, domicile, marriage, and the affairs of life, cannot be predicted from practical experience with any reasonable degree of certainty, and therefore what the minor will do on his majority towards the financial assistance or service of his parent is necessarily speculative, and so can afford no reasonable basis for the estimate of pecuniary compensation. *The reason, therefore, assigned by the Maryland decisions for the refusal to permit a recovery for what a minor will do, after his majority to assist his parent, is that the prospective assistance or service is essentially speculative.* "(Emphasis added.)

There has been considerable criticism of the minority rule which limits pecuniary benefits in the case of the wrongful death of a minor to the period when the child would have reached his majority. Prosser, *Torts*, 909 (4th Ed. 1971). Strict application of the minority rule often may make it difficult to secure more than a nominal recovery in the case of the death of a minor child, since the jury would be permitted to offset the anticipated services and contributions of the minor with the costs of rearing the child. As one critical court stated, "to award more than nominal damages in every case where we limit damages to the loss of a minor child's earnings above the cost of his support and maintenance, is an affront to reason and logic." *Lockhart v. Besel,* 426 P. 2d 605, 609 (Wash. 1967).[6]

Until passage of the 1969 amendment involved in this litigation, Maryland also was among those jurisdictions which limited recovery for the wrongful death of a minor to pecuniary losses alone. 14 A.L.R.2d at 492; *American Railroad Co. of Porto Rico v. Didricksen,* 227 U. S. 145, 149-50 (1913). Under this view, which apparently remains the majority rule, no award could be made for mental anguish, grief, sentimental loss or the sentimental value of

---

**6.** In Hoyt v. United States, 286 F. 2d 356 (5th Cir. 1961), a court refused to permit a deduction of the cost of rearing a minor child in an action under the Federal Employers' Liability Act, upon the ground that it would nearly always result in a minus quantity and defeat the evident intention of the Act to allow some recovery.

the deceased child to its parents. 14 A.L.R.2d at 495; *see, e.g., Wright v. Eastern Live Poultry Co.,* 19 Conn. Super. 312, 112 A. 2d 895 (1955); *Hudson v. Cole,* 102 Ga. App. 300, 115 S.E.2d 825 (1960); *Williams v. Dowling,* 318 F. 2d 642, 644 (3rd Cir. 1963). In Maryland, the earliest decision on the particular point is *Coughlan, supra.* There, the Court of Appeals had before it the question of whether a mother should be compensated for the mental suffering which she experienced as a result of the death of her child. In denying the right to recover such damages, the Court reviewed the English counterparts of the Maryland wrongful death statute, finding that "the title and language of the Act of Assembly of this State are almost literally the same with those of English statutes." *Coughlan, supra* at 106. The Court quoted the words of Coleridge, J., in *Blake v. R. R. Co.,* 10 Eng. L. & E. 467, as cited in Redfield's notes:

> "*The title of the Act is for compensating families of persons, etc., not for solacing their* wounded feelings." * * * By the terms of the Act, quoting the second section, 'the measure of damages is not the loss or suffering of the deceased, but the injury resulting from his death, to his family.' *This language seems more appropriate to a loss of which some estimate may be made,* than an 'indefinite sum, independent of all pecuniary estimates, to soothe the feelings, and the decision of the amount strongly tends to the same conclusion." *Id.* (emphasis added).

Continuing criticism leveled against the refusal to permit compensation for mental anguish and pain and suffering which so often attends the death of a child, spouse or parent, has led several States in recent years to change their statutes so as to permit recovery for mental anguish and related non-pecuniary damages.[7] Even in jurisdictions where

---

**7.** Tiner v. Tiner, 379 S.W.2d 425 (Ark. 1964), applying Ark. Stat. Ann. § 27-909; Klepper v. Breslin, 83 So. 2d 587, 592-93, (Fla. 1955), applying Fla. Stat. § 768.03; *see also* Leahy v. Morgan, 275 F. Supp. 424 (N.D. Iowa, E.D. 1967) holding that a claim by a father for damages for his mental pain and suffering resulting from the death of his minor child should not be dismissed.

damages for mental anguish, sentimental loss, etc., may not be recovered, courts have upheld substantial verdicts in cases where it was "very evident that the jury had taken the bull by the horns and in reality [had] . . . compensated for the prohibited sentimental aspects of the family relationship . . . ." Prosser, *supra* at 909. *See, e.g., National Homeopathic Hospital, supra,* where an award of $17,000 in the case of the negligent death of a 3 day old baby was upheld.

Nevertheless, prior to the 1969 Session of the General Assembly, Maryland continued to restrict the damages recoverable in the case of the wrongful death of a minor child solely to "pecuniary loss," *i.e.,* services and contributions which could be expected during the period from the child's death to the date he or she became twenty-one, minus the cost of rearing the child during that period. No recovery was permitted for any other type of alleged damages, including mental anguish, pain and suffering, loss of society and related non-pecuniary damages or *solatium.* The basis of the Maryland rule and the reason for the exclusion of all but "pecuniary loss" as a measure of recovery in the death of a minor child was the alleged speculative or conjectural nature of other types of damages.

In 1969 the Maryland General Assembly, responding to the increasing criticism of the strict "pecuniary loss" rule, enacted Section 4(b) of Article 67, providing that damages awarded by a jury in the case of the wrongful death of a spouse or a minor child *"shall not be limited or restricted to* the 'pecuniary loss' or 'pecuniary benefit' rule, but may include damages for mental anguish, emotional pain and suffering," etc. (Emphasis added.) As the preamble of the amendatory statute makes clear,[8] the Legislature wished to

---

8. "WHEREAS, In actions by those entitled under the wrongful death statute for the death of a person or a minor child, the 'pecuniary loss' rule or the 'pecuniary benefit' rule has been adopted by the Court of Appeals to determine the measure of damages in such cases; and

"WHEREAS, The 'pecuniary loss' or 'pecuniary benefit' rule in the case of the death of an adult is determined by measuring the present value of the pecuniary benefit which those entitled might reasonably have expected to receive from that person, had that person not been killed, and in the case of a minor's death, it is

change the measure of damages resulting from strict application of the "pecuniary loss" or "pecuniary benefit" rule in the case of wrongful death. As the result of the enactment of Section 4(b), it can no longer be argued that damages for mental anguish, pain and suffering, loss of society, companionship and the other categories of *solatium* enumerated in the statute are too speculative in the eyes of the law to permit their recovery in a suit by a spouse or a parent. Both in its text and in its purpose, Section 4(b) makes it clear that the "pecuniary loss" rule is no longer controlling as a basis or measure of recovery when the parents of a minor child sue under the wrongful death statute. To that extent, the *Coughlan* case and the decisions which followed it stand overruled by legislative fiat.

The appellee, however, argues that one of the limitations of the "pecuniary loss" rule still lingers, *i.e.*, any of the damages now made recoverable under Section 4(b), including mental anguish of the parents, must be limited to a period from the death of the child to the date on which he or she would have become twenty-one. We perceive no such limitation in the language of the statute nor, in view of its expressly remedial purposes, in the legislative intention behind its enactment.

In construing Section 4(b) we acknowledge, as the Court said in *Flores v. King*, 13 Md. App. 270, 274, 282 A. 2d 521 (1971), that the wrongful death statute "is in derogation of common law, and, therefore, should be strictly construed."

determined by measuring the pecuniary worth of the services which the child would have rendered during his life and to subtract from this probable cost of his maintenance, education and upbringing; and

"WHEREAS, Strict application of this test in the case of an adult results in a failure of those entitled to recover to be compensated for the loss of probable future companionship, society, comfort, and for the mental anguish, and in the case of a minor's death, the strict application of this test results in a minus figure, since the value of his services lost by death in modern society is generally much less than the probable cost of raising the child; and

"WHEREAS, It is desirable to substitute a valid test for determining damages for the fictional test of the 'pecuniary loss' or the 'pecuniary benefit' rule in which emotional factors frequently enter; now therefore, * * *."

*See McKeon, supra.* Nevertheless, as we pointed out in *Wittel v. Baker, supra,* Section 4(b) is a "remedial statute," an amendment to the original wrongful death act, and enacted "to change a law which [had] . . . been found to be undesirable in some respect[s]." *Id.* at 537. The mischief which the General Assembly wanted to undo through the enactment of the 1969 amendment to Article 67 was to avoid the limited recoveries which often occurred in cases of the wrongful deaths of children or spouses as a consequence of strict application of the "pecuniary loss" rule. We are not disposed to interpret that legislative effort in a restrictive manner so that it achieves less than was intended by those who passed it. As a leading commentator has observed: "It may now safely be asserted that the better and modern authorities are in agreement that the objectives and spirit of . . . [wrongful death] legislation should not be thwarted by a technical application." 3 Sutherland, Statutory Construction 422 (3d Ed. 1943). Section 4(b) is remedial in nature and "should be accorded a liberal construction consistent with the objective sought to be accomplished" by the General Assembly. *Klepper v. Breslin, supra* at 592-93. Thus, we approach the construction of Section 4(b) in the spirit urged by Mr. Justice Cardozo when, quoting Mr. Justice Holmes and speaking for the Supreme Court in *Van Beeck v. Sabine Towing Co., Inc.,* 300 U. S. 342, 350-51 (1937), he said:

> "Death statutes have their roots in dis-satisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' Its intimation is clear enough in the

> statutes now before us that their effects shall not
> be stifled, without the warrant of clear necessity,
> by the perpetuation of a policy which now has had
> its day."

In our view, the General Assembly did not expressly impose, nor did it intend impliedly to impose, any of the limitations of the "pecuniary loss" rule upon the newly enumerated categories of damages made recoverable by virtue of Section 4(b). Common sense supports what the text and purpose of the statute intended to accomplish. Assume that the mental anguish of a mother resulting from the wrongful death of a teenage daughter drove her to a mental institution for the rest of her life. Could it fairly be maintained that it was the General Assembly's intention to limit the damages which such a mother could recover for a period of one, two or three years remaining between the death of her child and the date when she would have attained her majority? We think not. In the words of the Supreme Court of Florida, a jurisdiction which for many years has permitted compensation for parental pain and suffering:

> "Those who have not brought a child into the
> world and loved it and planned for it, and then have
> it suddenly snatched away from them and killed
> can hardly have an adequate idea of the mental
> pain and anguish that one undergoes from such a
> tragedy. No other affliction so tortures and wears
> down the physical and nervous system.
> Psychosomatic illness of a serious nature may
> follow. The emotions may be unstrung, the nerves
> put on edge and the end effect may be a period in a
> rest home, a mental hospital, serious physical
> derangement and sometimes death. Damage for
> mental pain and suffering is one of the late
> developments in the law and its potentialities are
> not restricted as they formerly were because so
> much has been learned of the evil consequences
> that flow from mental injury. When the writer of

this opinion was admitted to the bar, $5000.00 might have been an exorbitant verdict in a case like this, but the mind has been explored and so much learned of its pathology that damage to it may now merit much larger verdicts than they have in the past. Motorists are charged with knowledge of these potentials, they are proper to be considered in a case of this kind and a verdict in contemplation of them will not be disturbed unless shown to be grossly erroneous."

Our review of the decisions in other jurisdictions where mental anguish, pain and suffering and related damages for · *solatium* are allowed by statute has not encountered a case which indicated that such damages are to be limited to the period remaining in the minority of the deceased child. *See, e.g., Bockman v. Butler,* 288 S.W.2d 597 (Ark. 1956); *Wolfe v. Lockhart,* 195 Va. 479, 78 S.E.2d 654 (1953). There appears to be only one case, however, which has passed on the precise issue involved in the instant appeal. In *Georgia Southern & Florida Railway Company v. Perry,* 326 F. 2d 921 (5th Cir. 1964), the Court had before it an action by a father and mother for the death of a child in a crossing collision between a train and an automobile. Florida law was determinative. In attempting to establish damages for mental anguish as permitted under the Florida statute, the parents of the decedent offered and the trial court admitted into evidence, over objection, mortality tables as to the life expectancy of the father and mother. In affirming a $65,000 judgment for the death of the appellees' child, the Fifth Circuit said:

"In considering whether it was proper to place before the jury the mortality tables which gave the estimated life expectancy, we look to the statute for some clue as to the standards by which damages for mental pain and suffering of the plaintiff parents are to be measured. All we get from the statute is that the recovery shall be in such amount as the jury may assess. *The measure of damages for a*

*parent's loss of services in an action for the wrongful death of a minor child is only the value of the services that the parent would be entitled to between the death and the majority of the child. Meeks v. Johnston, 85 Fla. 248, 95 So. 670. There is no such restriction in the measure of damage for mental pain and suffering. There is no exact yardstick by which recovery is to be measured and the solving of the difficulty in determining the amount of the award is left to the discretion of the jury unless clearly arbitrary or so great as to be shocking to the judicial conscience or indicate that the jury was influenced by prejudice or passion. Coast Cities Coaches v. Donat, Fla. App., 106 So.2d* 593. The mental condition of a parent resulting from the wrongful death of a child is a proper matter for consideration in fixing damages for mental pain and suffering. *Coast Cities Coaches v. Donat, supra.* There was, in this case, testimony of a psychiatrist that Mrs. Perry had been put into a depressed neurotic state by the death of her daughter. His testimony was that the reaction was 'a hurt that's turned inside and you just can't get rid of it.' Thus it appears that from the evidence the jury might have found that the mental pain and suffering would continue throughout the lifetime of the parents. As evidence of the probable lifetime length the mortality tables showing life expectancy were admissible." 326 F. 2d at 925-26. (emphasis added).

Florida was the first State to permit parents to recover damages for mental pain and suffering resulting from the wrongful death of their child. *Seaboard Air Line Railway Co. v. Moseley,* 60 Fla. 186, 53 So. 718 (1910). The Maryland General Assembly provided for the recovery of such damages for the first time through the enactment in 1969 of Section 4(b). If it had intended to limit the period for which such damages could be recovered, the General Assembly could have easily said so by making the limitations of the

"pecuniary loss" rule expressly applicable to the categories or damages authorized by the statute. This Court should not impose limitations which the Legislature has omitted or "under the guise of construction . . . remedy possible defects of the statute . . . ." *Amalgamated Casualty Insurance Co. v. Helms*, 239 Md. 529, 536, 212 A. 2d 311 (1965). As Mr. Justice Brandeis once put it: "To supply [legislative] omissions transcends the judicial function." *Iselin v. United States*, 270 U. S. 245, 251 (1926). Accordingly, even if we thought it to be sounder law and a more provident public policy that damages for mental anguish, pain and suffering, and the other *solatium* for which Section 4(b) now permits recovery, should be limited in the same manner as pecuniary damages traditionally have been restricted in Maryland, we would be stretching our judicial functions to fasten such a limitation on the statute, especially in view of the conceded remedial purpose behind it. A statute should not be added to by judicial construction. *Department of Motor Vehicles v. Greyhound Corp.*, 247 Md. 662, 668, 234 A. 2d 233 (1967).

Moreover, limitations do exist through which to guard against unconscionable recoveries of damages in wrongful death cases. Trial courts remain free to set aside jury verdicts which are excessive in amount. *Baltimore and Ohio Railroad Co. v. State, Use of Hauer, supra*. Furthermore, if experience under the new statute produces excessive liberality in jury verdicts for the deaths of minor children the Legislature can amend the statute by imposing limitations or setting restrictions on the total monetary recovery permitted in the case of a wrongful death of a minor child.[9]

In arguing that the limitation applicable to the "pecuniary loss" rule should also be applicable to mental anguish, pain and suffering, etc., the appellee points up the incongruity which might result should two young girls, one age 20 and

---

[9]. In this connection, we point out that a number of States have statutory ceilings which apply in all cases which involve wrongful death. *Measure of Damages for Wrongful Death of a Child.* 28 Washington-Lee Law Rev. 277, 281 (1961); Va. Code Ann., § 8-636 (Supp. 1960). *See also, Prosser, supra* at 910.

one age 21, be killed in the same accident. The parents of the former child could collect damages for mental anguish which might last their lifetimes, while parents of the girl who had achieved her majority would not be permitted to recover any such damages. There is merit in the point. Nevertheless, it is an argument that should be addressed to the General Assembly which drew the lines where it chose, and not to this Court, which, absent a constitutional prohibition, must accept those lines where they were placed.[10]

For the reasons stated, we find that the trial court judge erred in his instructions to the jury by limiting the damages which the appellants might recover under Section 4(b) to the period when their deceased daughter would have reached her majority, *i.e.*, approximately one year. In reversing the judgment on that ground, however, we do not mean to imply that the verdict rendered by the jury was grossly inadequate under the facts of this case. The evidence showed that the deceased daughter had left the parents' home and was living independently and apart from them at the time of her death. In addition, she was to be married within two weeks of the accident to the driver of the car in which she was riding when she was killed. It is quite possible, therefore, that the jury would not have returned any higher verdict than it did even if it had not been instructed to limit damages for mental anguish, pain and suffering, etc., to one year. Nevertheless, we cannot say that the erroneous instruction had no influence on the jury's verdict and, thus, for the

---

**10.** As we pointed out in Wittel v. Baker, supra, Section 4(b), as originally introduced, would have been "applicable to every death action," but during the course of its legislative history the bill was amended so as to apply only in "the case of the death of a spouse or a minor child . . . ." *Id.* at 536. We have no knowledge concerning the legislative reasons for ultimately limiting the statute to minor children and spouses only. Perhaps a compromise was reached on the ground that an adult child often would be a married person and, thus, his or her spouse could recover. Moreover, the pecuniary benefit rule would permit recovery in cases where an adult child had been contributing to the support of parents. It is not our function, however, to speculate on the reasons which explain the statutory classifications which the General Assembly has seen fit to make in Section 4(b). While they might result in inequities of the type referred to in the body of this opinion, we cannot say that on their face they deny equal protection of the law.

98

reasons stated in this opinion, we must reverse the judgment.

> *Judgment reversed; case remanded for a new trial; appellants to pay one-half of costs and appellee to pay one-half of costs.*