534 A.2d 1337

**CAROLINA FREIGHT CARRIERS CORPORATION et al.**

v.

**Michael E. KEANE et al.**

**No. 59, Sept. Term, 1987.**

Court of Appeals of Maryland.

Jan. 6, 1988.

M. Albert Figinski (Robert E. Cahill, Sr., Robert E. Cahill, Jr. and Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on the brief), Baltimore, for appellant.

Bernard J. Sevel (Marc K. Sloane, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The age limitation set forth in § 3–904(e)(1) of Maryland's Wrongful Death Act[1] states that *solatium* damages may be recovered by parents of a deceased person if that person

---

1. *See* Md.Code (1984 Repl.Vol., 1987 Cum.Supp.), §§ 3–901 to 3–904 of the Courts and Judicial Proceedings Article. Future citations to specific sections of statutes will be to that Article unless otherwise noted.

was a child "21 years old or younger." We shall decide in this case whether that section allows respondents Michael E. and C. Patricia Keane ("the Keanes") to recover for the wrongful death of their son, Gregory Thomas Keane, who was 21 years, 7 months, and 28 days old on the day he died. Petitioners Carolina Freight Carriers Corporation and Curnell McKinley Crockett (for convenience, both hereinafter referred to as "Carolina") claim that the statutory language limits recovery to those children who have not passed their twenty-first birthday. We disagree and in so doing will affirm the judgment of the Court of Special Appeals, *Keane v. Carolina Freight Carriers Corp.*, 70 Md.App. 298, 520 A.2d 1142 (1987).

## I. *Facts*

Gregory Thomas Keane, born on 11 March 1962, was unmarried and living with his parents (though not dependent on them) when he was killed on 7 November 1983 in a head-on collision. That collision was caused by the negligence of petitioner Carolina. Gregory's parents, the Keanes, instituted this action in the Circuit Court for Howard County making claims under the Wrongful Death Act. The jury awarded the Keanes *solatium* damages totaling $220,000 for the loss of their son.[2]

Carolina moved for judgment notwithstanding the verdict, or in the alternative, a partial new trial on the issue of *solatium* damages only. It contended the Keanes lacked standing to recover damages under § 3-904(e)(1) because Gregory was too old; he was not "21 years old or younger"

---

**2.** Section 3-904(e) states "For the death of an unmarried child, who is not a minor child, the damages awarded under subsection (c) are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, or guidance where applicable if:
(1) The child is 21 years old or younger; or
(2) A parent contributed 50 percent or more of the child's support."
There was also an award, not at issue here, in favor of Gregory Keane's estate, to compensate it for the emergency medical and funeral expenses.

at the time of his death. Judge Fischer granted the motion and entered judgment in favor of Carolina. As earlier noted, the Court of Special Appeals, *Keane v. Carolina Freight Carriers Corp., supra,* reversed and reinstated the judgments.

## II. *Statutory Construction*

The sole issue in this case is what is meant by the words "21 years old or younger" as that phrase is used in the Wrongful Death Act. Pointing to what it sees as the importance of the age of majority in Maryland law and to the legislative history, Carolina insists that the phrase must exclude anyone who has passed his or her twenty-first birthday. It bolsters this argument by asserting that statutes altering the common law, such as the Wrongful Death Act, should be strictly construed so that their words are given a limited and narrow construction. *See, e.g., Dunnigan v. Cobourn,* 171 Md. 23, 25, 187 A. 881, 882 (1936); *Demczuk v. Jenifer,* 138 Md. 488, 493, 114 A. 471, 473 (1921); and *Flores v. King,* 13 Md.App. 270, 274, 282 A.2d 521, 523 (1971). *But see, State v. Sherman,* 234 Md. 179, 184, 198 A.2d 71, 73 (1964) ("[these] statutes [3] are remedial and designed to close a gap in the preexisting law"); and *Van Beeck v. Sabine Towing Co., Inc.,* 300 U.S. 342, 350–351, 57 S.Ct. 452, 456, 81 L.Ed. 685, 690 (1937) ("Death statutes have their roots in dissatisfaction with the archaisms of the law.... It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied").

The Keanes, for their part, devote much ink to supporting the proposition that "21 years old or younger" is completely unambiguous. This being so, they aver, there is no need to look at legislative history; no need to construe. The plain language of the statute is enough. The words should be given their ordinary and natural meaning. This meaning

---

**3.** The Wrongful Death Act and former Art. 93, §§ 18 and 112 (personal representative's action for funeral expenses, etc.).

must be that the phrase embraces anyone who has not reached his or her twenty-second birthday.

We recently faced a similar "battle between contending canons of construction" in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 512, 525 A.2d 628, 631 (1987). In that case we concluded that "legislation usually has some objective, goal, or purpose. It seeks to remedy some evil, to advance some interest, to attain some end." *Id.* at 513, 525 A.2d at 632. We should search for legislative intent, the purpose, aim, and policy of the legislation, by looking at the words of the statute, as "controlled by the context in which they appear," and as "read in the light of other external manifestations of that purpose." *Id.* at 514, 525 A.2d at 632. *Kaczorowski* teaches that canons of construction, while sometimes useful guidelines, are not a set of Procrustean beds, to the dimensions of which all statutory language must be made to conform, however poor the fit. We decline to enter the debate about ambiguity or to engage in an exchange of slogans. We look at the words of the statute in the context of their adoption and from that perspective determine the meaning of the language in a manner consistent with the goal the legislature was trying to achieve.

### III. *Legislative History*

At common law, relatives had no recovery for the death of a person caused by negligence or the wrongful act of another. In England, this shortcoming was remedied in 1846, with the passage of Lord Campbell's Act. 9 & 10 Vict. Ch. 93. Maryland followed suit with Ch. 299, Acts of 1852. *See generally, McKeon v. State, Use of Conrad,* 211 Md. 437, 127 A.2d 635 (1956), and *Stewart v. United Elec. L. & P. Co.,* 104 Md. 332, 65 A. 49 (1906). The 1852 Maryland statute was "almost a literal transcript of LORD CAMPBELL'S Act...." *Stewart,* 104 Md. at 334, 65 A. at 50.

That first act permitted recovery for pecuniary loss suffered by a spouse, parent and child of a person killed by the

wrongful act, neglect or default of another. *McKeon*, 211 Md. at 442, 127 A.2d at 637. In the case of a deceased minor child, pecuniary loss was limited to compensation for the loss of that child during minority only, that is, for the period from death until the time the child would have reached the age of majority. *Coughlan v. B. & O. R.R. Co.*, 24 Md. 84, 107–108 (1866). *See also, Morrell v. Williams*, 279 Md. 497, 366 A.2d 1040 (1977); and *State v. Prince George's County*, 207 Md. 91, 113 A.2d 397 (1955). With a deceased adult, the compensation was to be equivalent to the pecuniary benefits which might have reasonably been expected from the continuance of the deceased's life. *B. & O. R.R. v. State, Use of Hauer*, 60 Md. 449, 467 (1883). *See also B. & O. R.R. Co. v. State, Use of Mahone*, 63 Md. 135 (1885), and *B. & O. R.R. Co. v. Kelly*, 24 Md. 271 (1866), both citing *Dalton v. South Eastern Railway Co.*, 93 Eng.C.L. 296 (1858) (27 year old son), and *Franklin v. South Eastern Railway Co.*, 3 Hurl. & Nor. 211 (1858) (21 year old son).

The list of persons entitled to recover was enlarged in 1937[4] and then again in 1952.[5] *McKeon*, 211 Md. at 442, 127 A.2d at 637. It was not until 1969, however, that the *type* of damages recoverable was expanded from pecuniary loss alone, to include also an amount for *solatium* damages. Md.Code (1967 Repl.Vol., 1969 Cum.Supp.) Art. 67, § 4(b) (now codified at § 3–904(d)) added:

> In the case of the death of a spouse or a minor child, the damages awarded by a jury in such cases shall not be limited or restricted to the "pecuniary loss" or "pecuniary benefit" rule, but may include damages for mental an-

---

**4.** Acts of 1937, Ch. 38, allowed recovery by an illegitimate child for the death of its mother and by the mother for the death of her illegitimate child. Fathers of illegitimate children were not added until the Acts of 1974, Ch. 494.

**5.** Acts of 1952, Ch. 16, allowed recovery by any person related by blood or marriage, who was wholly dependent upon the deceased, if there was no spouse, parent or child of the deceased entitled to recover.

guish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable.

The statute stated it allowed recovery only for the death of a spouse or minor child although it included damages for loss of *parental* care and other lost *parental* benefits.

In 1973 the Governor's Commission to Revise the Annotated Code pointed out this defect in the statute. *Commission Report No. 3F to the General Assembly of Maryland Regarding the Revised Article on Courts and Judicial Proceedings* (16 July 1973). The General Assembly thus considered further the *solatium* damage section and enlarged the recovery in 1975 to allow damages for the death of the "parent of a minor child". Acts of 1975, Ch. 120.

It is obvious that all of these changes were designed to expand the coverage of the Wrongful Death Act by adding to the categories of persons for whose deaths recovery could be had, by augmenting the categories of potential claimants, or by expanding the categories of damages recoverable. The remedial purpose discerned by Judge Henderson for the Court in *Sherman*, 234 Md. at 184, 198 A.2d at 73, was still operating. And that purpose remains evident in the legislative activity leading to the language now before us, the language adopted by Ch. 520, Acts of 1983.

That activity began with S.B. 156 of 1982, sponsored by Senator O'Reilly. It would have amended § 3–904(d) by deleting the adjective "minor" as a modifier of "child" and the phrase "of a minor child" as a limitation on "parent." The effect, then, would have been to allow recovery of *solatium* for, among other things, the death of any child or parent, not just the death of a minor child or the parent of a minor child. S.B. 156 did not pass, but was in substance reintroduced by Senator O'Reilly as S.B. 121 of 1983, with the adjective "minor" again deleted.

In the Senate Judicial Proceedings Committee, many of the witnesses testifying in support of the bill had lost adult children (*e.g.*, 20 and 22 year olds) to drunk drivers.[6] Senator O'Reilly also commented that the original drafter of the then-existing wrongful death statute never intended the law to exclude payments to parents for the deaths of non-minor children. The Committee accepted the bill as introduced, with the deletion of the adjective "minor," and rejected a "dependent child" amendment as being narrower than then-existing law—a "minor" might not be "dependent" on a parent. Under "Legislative Intent" in the "Summary of Committee Report" it was noted:

> This bill is intended to change the existing wrongful death statute so that all children or parents of a deceased person may recover for their emotional losses.

S.B. 121 was reported favorably by the Committee and adopted by the Senate, then referred to the House Judiciary Committee.

On the House of Delegates side, the 1983 action began with H.B. 461, which was a variation on S.B. 156 of 1982. Instead of proposing to delete the references to a "minor" child from § 3–904(d), it left that subsection unchanged. Instead, in its first reader form, it added a new subsection (e):

> For the death of a child, who is not a minor child, the damages awarded may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, or guidance where applicable if:
>
> (1) The child resides with at least one parent;
>
> (2) The child was a student enrolled in an educational institution at the time of the child's death; or
>
> (3) A parent contributed 50 percent or none [*sic*] of the child's support.

---

**6.** Unless otherwise noted, information about the history of S.B. 121 of 1983 and its counterpart, S.B. 461, comes from the notes, reports, and summaries in the respective Senate and House Bill files.

Delegate Palumbo, the lead sponsor, proposed to substitute for paragraphs (1), (2), and (3), the following:

(1) The child is 21 years of age or younger.

(2) A parent contributed 50 percent or more of the child's support.

And as the bill emerged from the House Judiciary Committee, the conditions attached to subsection (e) were essentially those:

(1) the child is 21 years old or younger; or

(2) a parent contributed 50 percent or more of the child's support.

This version, then, left intact what is now subsection (d), dealing with damages for the death of a spouse, minor child, or parent of a minor child. And it added new subsection (e), dealing with damages for the death of an unmarried child who is not a minor. H.B. 461 passed the House, which also amended S.B. 121 to conform to it. The Senate, in the meantime, passed H.B. 461. Both bills were enacted, with S.B. 121 containing the House language we have just reviewed, eventually becoming Ch. 520.

When the Judicial Proceedings Committee was considering H.B. 461, in its "Summary of Committee Report" it reported under "Background":

The bill is similar in its intent to Senate Bill [121] which the Senate has already passed. This House Bill is more narrowly drawn so that it only permits parents to recover for those unmarried children with whom they were likely to have had a close relationship, either because the child was under 21 (i.e., still in college) or because they contributed half of the child's support.

Whereas under the "Legislative Intent" section it stated:

This bill intends to compensate parents under the Wrongful Death Act for the death of an unmarried child who is 21 years or younger, or whom the parents supported in a substantial way.

This legislative history shows that the legislature certainly intended to expand the possibilities of recovery upon the

death of a child. It shows, also, concern that there be some limits on the new remedy. At various times these limits were described in terms of residence, educational status, or partial dependency. Eventually, the limits were stated in terms of age or partial dependency.

The educational provision that was in the introductory version of H.B. 461 tends to suggest that recovery up to age 22 and perhaps even beyond was within the legislative intent. One who enters first grade at age six is likely to graduate from college at an age beyond the twenty-first birthday—and even older, if graduate school is contemplated. Did the substitution of the "21 years old or younger" for the educational (and residential) provisions mean that the legislature intended to reduce the probable age in question, or that it believed the age provision was simply restating in other terms the basic thrust of the educational provision so far as age was concerned, the educational provision itself being unacceptable because of its elitist implications? The history can be read either way. The only thing we can be sure of is that the General Assembly was moving in a remedial direction—its goal was to allow damages not just in connection with the death of a minor child (already provided for in subsection (d)) but to extend recovery to the case of "the death of an unmarried child who is not a minor...." And in light of all this, we turn to the specific language of § 3–904(e)(1).

IV. *"21 Years Old or Younger"*

Section 3–904(e)(1) had not been construed in any reported opinion until the Court of Special Appeals decision in this case.[7] We proceed, therefore, to interpret the phrase "21 years old or younger" without the benefit of much Maryland case law. Like the Court of Special Appeals, we note that "or" serves to establish a contrasting or opposing

---

7. *Smith v. United States,* 608 F.Supp. 1270 (D.Mass.1985) allowed recovery of *solatium* damages under the Maryland Wrongful Death Act when the child, at the time of his death, was 21 years, one month and 22 days old. In that case, however, the construction of § 3–904(e)(1) was not at issue.

relationship. *Keane v. Carolina Freight Carriers,* 70 Md. App. at 302, 520 A.2d at 1144. Since people cannot be both 21 years old *and* younger at the same time, neither term is surplusage but rather they are descriptive alternatives representing two groups—the set of all people "21 years old" and the set of all people "younger".

There is no issue concerning the people to be included in the "younger" group—those who are under the age of 21 years. Instead, what we need to examine is the set of people "21 years old" and determine who is in that group. A. Does the set include only people who have not yet reached their twenty-first birthday? B. Does it include only people who have reached the day or moment of their twenty-first birthday? Or, C. Does it include those people who have passed their twenty-first birthday but have not yet reached their twenty-second birthday?

A. *Have Not Yet Reached the Twenty–First Birthday*

This set of people should be considered "younger" and thus not in the "21 years old" set. It was argued, though, that under the common law "one attains a given age at the first moment of the day preceding the anniversary of birth." 86 C.J.S. Time, § 8 (1954). So we could separate those not yet reaching the twenty-first birthday into two subgroups—the group before the eve of the birthday, thus in the "younger" set, and the group having reached the first moment of the eve, but not yet having reached the twenty-first birthday. Therefore, under the common law rule, this set of people "21 years old" would include only a 24 hour time span of people on the eve of their twenty-first birthday.

B. *Day or Moment of the Twenty–First Birthday*

This set of "21 year olds" would include at *most* a 24 hour time span of people, if one allowed the entire day of the birthday to be included. But, it might only include a *moment's* span of people if once the anniversary of the time of their birth was passed, they were no longer 21 years old but rather *over* 21 years old.

For example, Gregory Keane was born at 3:32 a.m. on 11 March. In the first interpretation, at most he would have had the whole day of 11 March to be considered 21 years old. In the second interpretation, he would have been considered 21 years old only at the *moment* of 3:32 a.m. on 11 March. After that he would be considered *over* 21 years old. Could the legislature reasonably have intended the set of people "21 years old"—to include only a day's group of people, or only a moment's group?

C. *Have Reached the Twenty–First Birthday But Not Yet the Twenty–Second*

This set of people encompasses all those in their twenty-first year from their twenty-first birthday up until the eve of their twenty-second. This is the more common or traditional use of the term "21 years old" as referring to one who has not yet reached the twenty-second birthday but is over 21. A person is normally considered 21 throughout the entire birthday year. Thus this set of people would span a time of 365 days (366 in leap years). We believe this gives to the statutory language a meaning consistent with both grammar and legislative purposes.[8]

To return to history for a moment, the Senate had originally wanted to include all deceased children. The House had wanted to limit recovery to those children still in college. The compromise was to include those children "21

---

**8.** The parties cite various out-of-state decisions construing statutes imposing variously worded age limits. Carolina sees its position supported by *Gibson v. People,* 44 Colo. 600, 99 P. 333 (1909), and *Knott v. Rawlings,* 250 Iowa 892, 96 N.W.2d 900 (1959), while the Keanes and the Court of Special Appeals derive comfort from cases like *Allen v. Baird,* 208 Ark. 975, 188 S.W.2d 505 (1945); *People ex rel. Makin v. Wilkins,* 22 A.D.2d 497, 257 N.Y.S.2d 288 (N.Y.App.Div.1965); *People v. Cooper,* 207 Misc. 845, 143 N.Y.S.2d 855 (1955); *Wilson v. Mid–Continental Life Ins. Co. of Oklahoma City,* 159 Okl. 191, 14 P.2d 945 (1932); *Watson v. Loyal Union Life Ass'n of Muskogee,* ₁43 Okl. 4, 286 P. 888 (1930); and *Covell v. State,* 143 Tenn. 571, 227 S.W. 41 (1921). These cases are interesting but each involves statutory language and legislative background unlike ours. None of these cases is decisive one way or the other. *See Maus v. State,* 311 Md. 85, 100, 532 A.2d 1066, 1074 (1987).

years old or younger". The "traditional" college-age student is in the middle of the junior year if under 21 but in his or her senior year when 21 years old. By interpreting the phrase "21 years old or younger" to include the entire twenty-first year of children 21 years old but under the age of 22 years, we give the fullest effect to both the House and Senate "general purpose, aim, or policy" reflected in the words of the statute. *Kaczorowski*, 309 Md. at 513, 525 A.2d at 632.[9]

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.

---

**9.** The Statutory Revision Division, Department of Legislative Reference, has developed a *Maryland Style Manual for Statutory Law* (1985) that at p. 5 offers a precise and clear way of stating the ideas of "younger than a specified age" ("[a]n individual under the age of 12 years ...") and "at least a specified age" ("[a]n individual at least 19 years old...."). Similar guidelines are found, *e.g.*, in the *Style Manual of the Commission to Revise the Annotated Code of Maryland* (Dec. 1983) at 7 and the *Governor's Commission to Revise the Annotated Code of Maryland: Revisor's Manual* (2d ed. Nov. 1973) at 42. It is interesting to note that when the legislature has had occasion to translate from cloudy language like that now before us to something more precise, it has adopted essentially the same construction we have. For example, Md.Code (1982 Repl.Vol.) Art. 27, former § 399A read: "In Anne Arundel [and several other counties], any person who is charged with the care of a child age seven (7) or less shall not allow that child to be locked ... in any dwelling...." This was repealed by Ch. 296, Acts of 1984, and reenacted as Md.Code (1984) § 5–801 of the Family Law Art. which in pertinent part read: "(b) A person who is charged with the care of a child under the age of 8 years may not allow the child to be locked ... in a dwelling...."